The Detroit, Grand Haven & Milwaukee Railway Co. v. David A. Hayt.

*Railway fences—Costs.*

1. The sufficiency of the fence which a railroad company is required to maintain along its track is not impaired by leaving gates in it; nor does it come in question where cattle have got upon the track by going through the gate while open.

2. A special finding that is immaterial in itself and is based on an erroneous instruction does not preclude the right to a judgment on other findings.

3. Costs are not allowed for transcripts of stenographer's minutes to be used in settling bills of exceptions.

Error to Clinton. (V. H. Smith, J.) Oct. 23.—Nov. 19.

CASE. Defendant brings error. Reversed.

*A. Cook, W. H. Russell* and *Geo. Jerome* for appellant.

*A. D. Griswold* for appellee.

COOLEY, C. J. Plaintiff sued the defendant to recover damages for the killing of certain colts owned by him, by running upon them one of its trains. The breach of duty charged upon the defendant was that while operating its railroad it "did not maintain a fence of the height and strength required by law, or sufficient to prevent cattle or other animals from getting on its said railroad on the south side thereof, in the township of Ovid, aforesaid, at a place other than at a street or farm crossing or at or about station grounds, but on the contrary thereof, the said defendant, at the time and place aforesaid, negligently and unlawfully permitted the said railroad and the track thereto, along which the said defendant ran several railroad steam-engines and passenger and freight trains by night and by day, to be and remain unfenced and open to free and unobstructed ingress by horses and cattle from adjoining lands," whereby the said colts "strayed and went upon the grounds and track of the defendant's said railroad, at the time and place aforesaid, and were then and there run upon and against," etc.

On the trial it appeared that the colts went upon the track of the railroad in the night-time, passing to reach it through the premises of one Van Deusen, and through a gate immediately back of Van Deusen's house. The gate was not at a farm crossing, and would seem from the evidence to have been much used by people in the neighborhood. Van Deusen, for the protection of his own stock, was accustomed when at home to look every night to make sure that the gate was closed, and he had done so and found it closed the evening of the night the colts were killed. How the gate came to be open afterwards was not shown. The plaintiff contended on the trial that the defendant should not have allowed the gate to be constructed for use where this was constructed, and that the fence, with this gate in it, could

not be deemed the sufficient fence the statute requires. In submitting the case to the jury the judge said :

"The question comes, had the defendant complied with the law—made such a fence along the south side of its track as the law required when it permitted the gate to be kept there ; assuming now that it was a good gate, and of sufficient strength—equal to the strength of the fence when properly shut,—did they comply with the law when they permitted the gate to be put in there and kept there, knowing its liability to be sometimes open and sometimes shut; was that meeting the requirements of the law ? If it did meet the requirements of the law, then, of course, there is no negligence at that point, and no liability because of putting in the gate.

I leave the question to you, gentlemen of the jury, to say from the evidence in the case what is in the case as to the gate being there, and its having been sometimes open and sometimes shut by the employees of the company. I leave that for you to say, with the gate there, and being liable to be sometimes open and sometimes shut, and assuming that it was of proper strength when shut, whether in that condition there would be a fence there, as required by law, equal in strength to a division fence as required by the statute. If it was, with the gate there in that condition, its liability to be open and shut, as you have heard it spoken about in the evidence, then the company has done its duty ; if not, then it has not."

The jury returned a verdict for the plaintiff. They also found specially in answer to questions that Van Deusen closed the gate between eight and nine o'clock in the evening before the injury ; that it was afterwards opened by some person or by some other means ; that the colts passed through the gateway by reason of its being so opened ; and "that the gate in the condition testified to by the witnesses, either shut or opened, was not a sufficient fence within the meaning of the statute."

Judgment was rendered on the verdict, and the defendant brings error.

The instruction of the judge took an erroneous view of the statute. The requirement of the statute then in force was that every railroad company should "erect and maintain

fences on the sides of their respective roads of the height and strength of a division fence required by law, with fences and cattle-guards at all highway and street crossings, sufficient to prevent cattle or other animals from getting on such railroad; also gates or bars convenient for farm crossings." Public Acts 1875, p. 139. It seems to have been thought by the judge that the railroad company should put gates in or allow them to be put only at farm crossings; and that if they were put in elsewhere, and were more liable to be left open than a fence was to be thrown down or get out of repair, the fence, with the gate in, could not be deemed a sufficient fence. And this obviously was the view of the jury.

The statute, it will be noticed, is imposing duties on the railroad company when it requires it to erect gates or bars at farm crossings. It does not preclude gates or bars at other places; and there must be many places where they will be needed quite as much, and where the company might be justly subject to complaint if it should refuse to adjoining proprietors the convenience which gate or bars would furnish. We have no doubt whatever of its right to permit them to be constructed, or to construct them itself if it shall deem the construction advisable.

Whether the fence elsewhere was sufficient is of no importance in this case, it appearing that the colts actually passed through the gate. *Lawrence v. Milwaukee &c. Ry. Co.* 42 Wis. 322. And the last special finding of the jury, being based on the erroneous instruction of the judge, and in itself immaterial, would not preclude the right of the defendant to a judgment, which on the other findings ought to have been given in its favor.

A new trial must be ordered.

The other Justices concurred.

Afterwards, at the January term, 1885, appellant's counsel moved for a re-taxation of costs so as to include the sum which appellant had been required to pay in order to obtain a transcript of the stenographer's minutes of the trial in the lower court. It appeared that the board of supervisors had

passed a resolution requiring parties who needed such transcripts for the use of the judge in settling exceptions to pay therefor. Submitted and denied January 6, 1885.

*W. H. Russell* for the motion.

*A. D. Griswold* against, citing *Bell v. Pate* 48 Mich. 640.

PER CURIAM. The cost of obtaining a transcript of the stenographer's minutes, where such transcript is required by the circuit judge before settling a bill of exceptions, will not be allowed in the taxation of costs, even though the board of supervisors shall have declared by resolution that every litigant so requiring a transcript shall pay for it.