# ADOLPH KROLIK, HENRY A. KROLIK, AND HERMAN KROLIK v. GEORGE W. GRAHAM.

*Fraudulent conveyances—Evidence—Simultaneous transactions— Objection to evidence—Practice in Supreme Court.*

1. In a suit for the value of merchandise seized on attachment, the files and records in the attachment suit were offered in evidence by the defendant, and objected to as *immaterial*, no suggestion being made that they were *informal* or *defective*, and the case went to the jury on the theory that *proper* attachment proceedings were made out.

    *Held*, that the objection could not be widened in the appellate court, the evidence being material to the defense, and that the proceedings will be presumed regular in that court.

2. A firm executed *two* chattel mortgages on their stock of goods on the *same* day. One of the mortgagees acted as a friendly adviser of the mortgagors in the transaction, had the mortgages recorded, and delivered to the other mortgagees their security; and at same time wrote a letter in their store, advising the mortgagors to represent to creditors that they owed the *full* face of the mortgages, and that the writer procured the other mortgage because his firm had guarantied to the amount of the debt secured thereby. As a matter of fact, each mortgage was in excess of the *actual* indebtedness. There was an understanding between the two mortgagees that *each*, in case of *emergency*, was to look out for the security of the *other*. On the trial of a suit in trover, brought by the mortgagees non-active in securing the mortgages, against attaching creditors,—

    *Held*, that inquiries concerning the *details* and *intent* of the transactions attending the making of *both* mortgages were proper, it being a *single* scheme, so far as the mortgagors were concerned, whether right or wrong, and it cannot be said that any part of it did not bear upon the rest; that it was important to know their intent and that of the mortgagee who was *active* in securing the mortgages, and competent to prove their fraud, if any was intended, and their purpose, whatever it was.

    *Held*, further, that the letter written to the mortgagors was properly admitted in evidence as a part of the cross-examination of the mortgagee who wrote it, it being within the lines of his examination, and important, not only as part of the series of transactions, but also to test the accuracy of his memory or his veracity, being admissible for *either* purpose. For further discussion of this branch of the case, see opinion, pp. 229–231.

Error to Clare. (Hart, J.) Argued November 17, 1886. Decided January 13, 1887.

Trover. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Adolph Sloman* (*H. Geer*, of counsel), for appellants.

*Wisner & Draper*, for defendant.

CAMPBELL, C. J. Defendant was sued in trover for seizing on attachment various articles of merchandise once belonging to the firm of Zemon & Sable, at Clare, in Clare county, and mortgaged by them to plaintiffs for $1,500, and to Jacobson & Netzorg for $2,500. These mortgages were given December 17, 1884. Plaintiffs are merchants in Detroit, and Jacobson & Netzorg in Greenville. The facts were that, just before these mortgages were given, Mr. Jacobson, who was a relative or connection of the members of Zemon & Sable, went to Clare on their request, apparently as an adviser. While there, he advised and procured these mortgages, for the amounts named, to be given to the mortgagees. He acted for plaintiffs on a friendly understanding existing, whereby either firm was expected, in any case of emergency, to look out for the security of the other. Both mortgages were excessive, each being for several hundred dollars more than the actual debt. Zemon & Sable owed plaintiffs less than $1,000. Jacobson had the mortgages recorded, and took plaintiffs' mortgage to Detroit, and handed it over the next morning. On that same morning, Jacobson, in plaintiffs' store, wrote to Zemon & Sable a letter, urging or advising them to represent to creditors that they owed what the mortgages called for, and to say, also, that Jacobson procured plaintiffs' mortgage because his firm had guarantied plaintiffs for them to $1,500, but they owed a little more. It also urged the sending of what money they took in to Jacobson, and some to plaintiffs, and represented that Krolik &

Co. would sell them goods at low rates, and would buy such as they did not keep.

It was claimed that the plaintiffs' mortgage was intended to cover future sales. No future credits were in fact given, but a small bill was bought through plaintiffs, and paid for. The questions on trial all related to the validity of plaintiffs' mortgage as against other creditors. The questions are not numerous, and may be mostly classed together.

An objection was raised on the trial to the proof of the several attachment files and records, and it was pressed in this Court that there was no sufficient proof of valid proceedings and judgments.

When these documents were offered, the only objection raised was that they were immaterial. It was not suggested that they were informal or defective, and the case went to the jury on the theory that proper attachment proceedings were made out. We do not think the objection can now be widened. They were unquestionably material to the defense, and we must presume they were not defective.

Some objections were also made to inquiries concerning the details and intent of the transactions attending the making of the two mortgages. We think that whole matter was proper to be inquired into. So far as Zemon & Sable were concerned, it was a single scheme, whether right or wrong, and it cannot be said that any part of it did not bear upon the rest. It was important to know their intent, and that of Jacobson, as they were the only acting parties. It was competent to prove their fraud, if they meant any fraud, and to prove their purpose, whatever it was. Whether plaintiffs would be bound, might depend on other considerations which were presented on the trial. But proof of the transaction must come in the order of time before proof of subsequent knowledge and approval, and it was not irrelevant. Assuming that the fraud must be shown as to both, it must usually be shown consecutively. The Jacobson mortgage was prop-

erly in evidence as part of this transaction. It was equally relevant, further, because possession had been taken under it, and plaintiffs' rights were postponed to it by the order of record if it was intended to stand first, or held in parity with it if simultaneous. It is impossible to shut it out.

Objection was made to the introduction of Jacobson's letter of December 18. This came in as a part of Jacobson's cross-examination, after he had denied giving any such advice as the letter contains. It was legitimate cross-examination, and we can see no ground for not so regarding it. It came within the lines of his examination, and was important, not only as part of the series of transactions, but also to test the accuracy of his memory or his veracity, being admissible for either purpose.

But, as the court had a request presented concerning this letter, which was not given, it may as well be referred to here. It was as follows:

"The letter written by Jacobson to Zemon & Sable, in Hebrew (defendant's Exhibit B), is not to be considered by you in determining the good or bad faith of Krolik & Co.'s mortgage, as there is no proof that it was written by plaintiffs' consent, instigation, or knowledge."

It may be proper to refer again more particularly to this letter, and the circumstances under which it was written. It appears from the plaintiffs' proofs that it was written on the day after the mortgages were given, and on the day Jacobson arrived in Detroit, and that he had given full explanations to the plaintiffs of the mortgage and its purpose, including an expectation of further goods, if needed. There is other testimony in the case, but contradicted, that on this occasion one of the firm of plaintiffs, almost simultaneously with the letter, stated to Mr. McGraw (who, as a creditor, had come in to make inquiries) that the mortgage was given for a debt equal to its face, and that Jacobson had guarantied the account, and taken a mortgage to secure that as well as his

own. In the same interview, Jacobson represented his own mortgage to be for no more than was due, and that plaintiffs' mortgage was fully due. Upon these representations Mr. McGraw offered to sell out his own claim for 50 cents on the dollar, and Jacobson and plaintiffs appear to have proposed arrangements which would have taken it up. Why they were not completed does not clearly appear.

It is not for us to settle disputed facts, or to consider what we might have done had we been jurors. The only question in regard to this letter remaining is whether the request asked should have been granted. It is true that all the witnesses for plaintiffs indicate that plaintiffs had no knowledge or concern about this letter; but whether or not there were circumstances which might bear a contrary meaning is a different thing.

The request was open to the criticism of being altogether too broad. The court charged very strongly that plaintiffs could not be held for the fraud intended or perpetrated by the other parties, unless they also had a fraudulent intent. Whether this letter showed any fraudulent intent in plaintiffs or not, it certainly tended to show the bad faith of the mortgage, so far as Jacobson, Zemon, and Sable were concerned, which was a main issue. The court could not have been required to give this request as it was asked, and therefore it was not error to say nothing directly about it.

But we think there were circumstances which had some tendency to connect plaintiffs with it. It was written in plaintiffs' office, after a conference upon the mortgage, and contained direct reference to the proposed furnishing of goods, which had been considered in that conference. It contained cautions to explain the taking of the mortgage as connected with a guaranty by Jacobson, which had, according to Mr. McGraw, been stated to him by one of the plaintiffs, and so done to persuade him of the validity of the mortgage, and answer doubts which might have arisen from

what would otherwise look like intermeddling. It reiterates the same representations made, as Mr. McGraw says, by both parties to him, concerning the amount of the debts, and urged that they should be made to creditors generally. It also purported to convey a message or assurance on behalf of plaintiffs.

We are not able to say that a letter written under such circumstances, by the man who had acted for all parties, in the office of plaintiffs, stating what both had adopted as their scheme to influence creditors, and conveying suggestions which infer a common purpose, might not have been legitimately referred by the jury to a common origin, in spite of assurances to the contrary. If so, it is not in our province to weigh the facts.

With this exception, the charge was very strong in favor of all the law points raised for plaintiffs, and certainly did not err or lean against them. It gave, in substance, all that was asked. If it did not say in so many words that fraud is not to be presumed, it did say that while the burden of proof was on plaintiffs to prove the existence and extent of their debt, and the making of the mortgage, yet it was upon the defendant to establish that there was fraud in the transaction by a preponderance of proof.[1] And we can find nothing which indicates that any improper testimony was let in, or any improper use allowed to be made of it.

As the court below would not allow the jury to find against plaintiffs on any ground of sufficient agency in Jacobson to bind them, we need not consider that question, since plaintiffs obtained the advantage upon it in the rulings.

The judgment must be affirmed.

The other Justices concurred.

---

[1] Plaintiffs' request was as follows: "Fraud is never presumed; it must be proven, and the burden of proving plaintiffs' mortgage fraudulent must rest on the defendant."