PEOPLE v. FOGLESONG.

1. CRIMINAL LAW—JURORS—CHALLENGE FOR CAUSE.

It is not error, upon a prosecution for murder by poisoning, to refuse to excuse for cause a juror who testifies upon his *voir dire* that he has heard that poison was found at the inquest upon the body of the deceased, and that, from what he has heard, it is his impression that the deceased died from the effects of poison, and that he does not know but it would take evidence to remove such impression, where he further testifies that he has no impression as to the guilt or innocence of the respondent, and that he has no such fixed opinion as to the poisoning as would prevent him from giving the respondent a fair and impartial trial.

2. SAME—EXPERT WITNESSES—HYPOTHETICAL QUESTIONS.

It is not essential that a hypothetical question propounded by the people to an expert witness should embrace all the proofs in the case, but it may be based solely on those adduced by the prosecution.

3. SAME—OBJECTIONS—DEFINITENESS.

To lay the foundation for an exception to the form of a hypothetical question, the particulars wherein the question leaves out anything that ought to be embraced within it, or embraces anything that ought to be excluded, should be clearly pointed out.

4. EVIDENCE—WITNESSES—IMPEACHMENT.

Evidence that a witness had expressed an opinion that his brother and a certain woman were guilty of improper conduct is not admissible to impeach his testimony that he had never seen anything improper in their relations.

5. SAME—INSTRUCTIONS—PREJUDICIAL ERROR.

The admission of such evidence upon the trial of the brother for murder is reversible error, where the prosecution are proceeding upon the theory that the alleged improper relations furnished the motive for the crime; and the error is emphasized by the refusal of the circuit judge to charge that the evidence of the statements previously made by the witness can be used, if at all, only for the purpose of impeachment.

6. SAME—TESTIMONY OF PHYSICIAN—CONDITION OF PATIENT.

 Upon a prosecution for murder by poisoning, a physician whom
  the deceased consulted about a month before her death may
  testify as to what she told him about her condition at the
  time of the consultation, but not as to her statements con-
  cerning previous symptoms.

Error to Hillsdale; Lane, J. Submitted January 28, 1898. Decided April 5, 1898.

Myron P. Foglesong was convicted of murder in the first degree, and sentenced to imprisonment for life in the state prison at Jackson. Reversed.

*Stone & Twiss* and *O. A. Janes*, for appellant.

*Fred A. Maynard*, Attorney General, and *S. D. Bishopp*, Acting Prosecuting Attorney (*F. A. Lyon*, of counsel), for the people.

MOORE, J. The respondent was convicted of murder, and sentenced to state's prison for life. It is claimed that error was committed in not excusing jurors for cause. One of the proposed jurors testified, in substance, that he had heard the facts talked about, but that, from what he had heard, he did not have an impression regarding them; that he had heard about their claiming poison was found at the inquest upon the body, and that, from what he had heard, it was his impression that the wife of respondent died from the effects of poison; that that was his opinion then; that he did not know but it would take evidence to remove it. He testified that he had no impression as to the guilt or innocence of the respondent, and that he had no such fixed opinion as to the death from poisoning that he could not give the respondent a fair and impartial trial. It is said that this juror should have been excused for cause. It is the contention of counsel that three things must be shown by the people before a conviction can be had: *First*, death by poisoning; *second*, that the poison was administered by the accused; *third*, that it was

given for an unlawful purpose; and it is argued that, if the juror begins the trial with an opinion as to either of these material things, it cannot be said that the juror is unbiased and impartial. Counsel rely upon the recent case of *People* v. *Thacker*, 108 Mich. 652. It must be conceded that there is language used in that case which tends very strongly to support the contention of counsel. An examination of the case of *People* v. *Thacker* will show that the juror had conversed with a member of the coroner's jury, and with others, and that from what he had heard he had formed an opinion, not only that Mrs. Thacker had been poisoned, but had formed an opinion as to the guilt of the respondent, based upon what he had heard, and the supposition that what the member of the coroner's jury had told him was true, and that, at the time he was examined, he said it would require testimony to remove the opinion he had formed. In the disposition of that case, it was not necessary to use the following language found in the opinion:

"This fact, if it was a fact, that poison was found in the stomach of Mrs. Thacker, was one of the most important things in the case for the people to establish. A juror who believed that fact to exist cannot be said to be in a condition to act fairly, candidly, and impartially."

This language is not in harmony with previous decisions of this court. See *Stewart* v. *People*, 23 Mich. 63 (9 Am. Rep. 78), where it was held that a belief on the part of the juror that the crime charged had been committed by some one did not disqualify the juror if he had no opinion as to whether the respondent committed the offense. See, also, *Cargen* v. *People*, 39 Mich. 549, where it was held that, though the juror had a positive opinion that the deceased was murdered, this did not disqualify him if he had no opinion of the guilt or innocence of the respondent. See, also, a collation of cases in note to *Smith* v. *Eames*, 36 Am. Dec. 530 (4 Ill. 76); also, *State* v. *Thompson*, 9 Iowa, 188 (74 Am. Dec. 342). We are satisfied with the ruling in the case of *People* v. *Thacker*, *supra*, but think

the language before quoted is not a correct statement of the law.  In this case the proposed juror stated that he had no opinion as to the guilt or innocence of the accused, and we do not think he was disqualified.  It is not possible for a murder to be committed without it being the subject of wide-spread comment, and it becomes the subject of many newspaper articles, so that wideawake and intelligent men, who read newspapers, are almost sure to learn something of what is claimed in relation to whether a crime has been committed or not, and who committed it. It is not desirable that the rule in relation to the competency of jurors should be so fixed that only the ignorant and unfit can do jury service in these important cases. On the other hand, the accused is entitled to be tried by jurors who are not biased, and who do not have such fixed opinions of his guilt as will preclude them from acting impartially in his case.  In addition to the cases cited, see *Holt* v. *People*, 13 Mich. 224; *People* v. *Barker*, 60 Mich. 277 (1 Am. St. Rep. 501).  We do not think the court erred in overruling the challenges to the proposed jurors.

Complaint is made of certain hypothetical questions which were propounded by the people to the expert witnesses.  The respondent was not represented in the trial of the case by the attorneys who present the case here, but he was represented by very able counsel.  When they interposed the objection to the questions, they were asked by the trial judge to indicate wherein the question left out anything which ought to be embraced in it, or wherein it included anything which ought not to be included.  Counsel were either unable or unwilling to indicate to the court in what particular the question was wrong.  A careful examination of the record has not disclosed to us that any of the essential things shown by the testimony on the part of the people to exist were omitted from the question, or that there was embraced in it any essential element in relation to which there was no proof offered on the part of the people.  It is now claimed that there should have been

embraced in this question, not only the proof offered upon the part of the people, but that which was offered upon the part of the respondent. It is said that it is the duty of the prosecuting officer to lay all the facts before the expert; citing *People* v. *Vanderhoof*, 71 Mich. 177.

In the second edition of Rogers on Expert Testimony (section 27), the rule is stated as follows:

"Counsel, in framing the hypothetical question, may base it upon the hypothesis of the truth of all the evidence, or on an hypothesis especially framed on certain facts assumed to be proved for the purpose of the inquiry. The question is not improper simply because it includes only a part of the facts in evidence. And, if framed on the assumption of certain facts, counsel may assume the facts in accordance with his theory of them, it not being essential that he should state the facts as they actually exist. 'The claim is,' says Chief Justice Folger in *Cowley* v. *People*, 83 N. Y. 470 (38 Am. Rep. 464), 'that a hypothetical question may not be put to an expert unless it states the facts as they exist. It is manifest, if this is the rule, that in a trial where there is a dispute as to the facts, which can be settled only by the jury, there would be no room for a hypothetical question. The very meaning of the word is that it supposes — assumes — something for the time being. Each side, in an issue of fact, has its theory of what is the true state of the facts, and assumes that it can prove it to be so to the satisfaction of the jury, and, so assuming, shapes hypothetical questions to experts accordingly. And such is the correct practice.'

"It is therefore the privilege of counsel to assume any state of facts which there is any evidence tending to prove, and to have the opinion of the expert based on the facts assumed. The fact that counsel make an error in their assumption does not render the question objectionable, if it is within the possible or probable range of the evidence. But the testimony should tend to establish the facts embraced in the question. A court, however, has no right to reject a question which counsel claims embraces facts which the evidence tends to prove, simply because, in its opinion, the facts assumed are not established by a preponderance of the evidence. The question should be allowed if there is any evidence tending to prove the facts assumed; for what facts are proved in a case, when there is any evidence tending to prove them, is a matter for the

jury, and not for the court. But, if the hypothetical question is clearly exaggerated and unwarranted by any testimony in the case, an objection to it will be sustained. To allow on the direct examination an hypothetical question to be put which assumes a state of facts not warranted by the testimony is error, and counsel will never be permitted on the direct examination to embrace in an hypothetical question anything which the testimony does not either prove or tend to prove. * * * A question based on an assumption which the evidence neither proves nor tends to prove is misleading.

"But, to lay the foundation for exceptions on the ground that the hypothetical question embraces facts not in evidence, the attention of the trial judge should be called to the specific objection, in order that he may determine, as he must in the first instance, whether there is sufficient evidence tending to prove the facts stated to authorize the question. For the rule is a general one that objections to testimony should be specifically stated to the trial court, and that only such objections as are so stated can be considered on appeal."

And see *Turnbull* v. *Richardson*, 69 Mich. 413.

We do not think any error was committed in relation to the hypothetical questions.

The respondent is a physician. It was the theory of the people that the wife of the respondent was taken ill upon her return from a visit to the brother of respondent, and that the respondent administered hypodermic injections of strychnine to his wife, for the purpose of killing her, and continued the treatment until it resulted in her death. It is also claimed that his motive in poisoning his wife grew out of his intimacy with one Mrs. C. It was the claim of the respondent that his wife was ill of heart trouble and with brain trouble, and that the strychnine was properly administered as a medicine, and without any unlawful purpose. To show the illness of Mrs. Foglesong, the brother of the respondent was sworn on the part of the respondent, and testified that, while the wife of the respondent was visiting him, she was ill, and was ill when she returned home, and he described her illness in detail.

No allusion was made in his direct testimony to the relations of the respondent with Mrs. C. In answer to questions put to him by the people on cross-examination, he stated when and where he had seen Mrs. C. and the respondent together, and said he had never seen anything improper between them. He then identified a letter he had written to Mrs. Gray in September following the death of Mrs. Foglesong, and, against objections, portions of that letter were received in evidence. He wrote Mrs. Gray that he was sorry she honored Mrs. C. enough to go to her house, and stated that they tried their best to get that on him, but that he frankly said, "No. I did not notice that [using an epithet that indicated Mrs. C. was a bad woman], or speak to her." He also wrote:

"I had to go back Tuesday morning, to attend court, and in it I made application to have a guardian appointed for Myron; and, when I came to Bronson, he gave me fits, but he has a guardian just the same. * * * I don't think he is as crazy as he is devilish."

He testified that, when he wrote of Myron, he referred to the respondent. He was also required on cross-examination to testify to expressions of opinion he had made to Mrs. Gray and others concerning the relations of the respondent and Mrs. C., and to his having on one occasion prayed that his brother might mend his ways with Mrs. C., and other statements of that character. If this cross-examination had related to any statements the witness had made to others of anything he had seen between respondent and Mrs. C., it might be urged with a good deal of force that it was testimony of an impeaching character; but, at most, these statements were but expressions of opinion of the witness, not based upon anything he knew; and the respondent should not be held responsible for any ill opinion which his brother might at one time have entertained of him. These expressions did not contradict any statement the witness had previously made of the relations between the respondent and Mrs. C. They had no tendency to impeach the witness. They were well

calculated to prejudice the jury against both Mrs. C. and the respondent, and ought not to have been received in evidence.

The court was requested to charge the jury that these statements could be used only for the purpose of impeaching the witness, but declined to do so, and made no allusion to the subject in his general charge. As already stated, this testimony was not competent, but, if it was to be received at all, the jury ought to have been clearly instructed as to the purpose for which it could be used, and it was error not to do so. It can easily be seen that these statements made by a brother of the accused were well calculated to prejudice the jury, and work great harm to the respondent.

To show the state of health of Mrs. Foglesong during the month previous to her death, which occurred August 9, 1891, Dr. Sayles was called as a witness by the respondent. He testified that Mrs. Foglesong, on the 18th day of July, called on him for treatment for brain trouble, and other ailments which the doctor described. He was then asked what Mrs. Foglesong told him about vomiting before coming to see him. This testimony was excluded, and its exclusion is said to be error. The court allowed the witness to state fully what Mrs. Foglesong had told him about her present condition, and the excluded testimony referred to her statements of what her experience had been before she came to see him the last time. We do not think the ruling of the court was error. *Kelley* v. *Railroad Co.*, 80 Mich. 237 (20 Am. St. Rep. 514).

We do not deem it necessary to discuss the other assignments of error. Some of them are not well taken. The others relate to matters which are not likely to occur in a new trial. For the errors above stated, the judgment of the court below is reversed, and a new trial ordered.

The other Justices concurred.