PHILIP *v.* HERATY.

1. STREET RAILWAYS—STEAM RAILROAD CROSSING—NEGLIGENCE—
  QUESTION FOR JURY.

> Under 2 Comp. Laws, § 6464, providing that street-railway companies shall require their drivers, before going upon a crossing of a steam railroad, to bring their cars to a full stop, and make sure that no engine or cars are approaching, the failure of the motorman of a street car to make sure that no engine or car is approaching before attempting to cross is not always negligence; and, having regard to the circumstances attending such failure in the case at bar, the question was properly left to the jury.

2. SAME — DEATH OF YARDMASTER — EVIDENCE — CONTRIBUTORY NEGLIGENCE.

Where a railroad yardmaster in charge of a freight train, and riding thereon, was killed in a collision with a street car at a crossing, opinion evidence that it was negligent and unsafe, in the absence of a watchman, to back the train across the street without flagging, is not conclusive that decedent was guilty of contributory negligence, and was properly left to the jury, with the testimony tending to show an exceptionally dangerous crossing.

3. SAME—FAILURE TO EMPLOY WATCHMAN.

Negligence of the railroad company, if any, in failing to keep a watchman at the crossing, was not imputable to deceased.

4. SAME—INSTRUCTIONS.

An instruction that if it was negligence on the part of the railroad company to back the train across the track without flagging, and the deceased was in control of the train, no recovery could be had for his death, was proper.

5. ACTION FOR DEATH—DAMAGES — EVIDENCE — WIFE—CHILDREN.

Under 3 Comp. Laws, § 10428, limiting the recovery in actions for death to pecuniary injuries to the persons entitled to distributive portions of decedent's estate, evidence that plaintiff was not decedent's lawful wife, but that he had a lawful wife then living other than plaintiff, and that he had children then living by such wife, was admissible.

6. SAME—AGREEMENT FOR ADOPTION.

Evidence that deceased had agreed with plaintiff to adopt her two children by a former husband was inadmissible.

7. SAME—MORTALITY TABLES.

In an action for death, the mortality tables are ordinarily admissible on the question of decedent's life expectancy.

8. TRIAL—ARGUMENT OF COUNSEL.

The argument of counsel for plaintiff *held* subject to the criticism of being intemperate and unfair. A defendant is entitled to a dispassionate consideration of the questions at issue.

ON MOTION FOR REHEARING.

1. JUDGMENTS—APPOINTMENT OF ADMINISTRATRIX—WIDOWHOOD—CONCLUSIVENESS.

The adjudication that plaintiff was the widow of deceased, necessarily determined in the proceedings whereby she was appointed administratrix, is not conclusive as to the fact of widowhood, but may be attacked by defendant, not having

appeared or taken part in the proceedings for letters of administration. *James* v. *Mining Co.*, 55 Mich. 347, distinguished. CARPENTER, J., and MOORE, C. J., dissenting.

2. APPEAL—EVIDENCE—QUESTIONS NOT RAISED BELOW.
   Reasons for the admission of testimony which were not brought to the attention of the trial judge at the time of its exclusion cannot be urged on appeal.

Error to Bay; Shepard, J. Submitted November 20, 1903. (Docket No. 148.) Decided January 12, 1904. Rehearing denied June 27, 1904.

Case by Nellie M. Philip, administratrix of the estate of George Philip, deceased, against Michael P. Heraty and John C. Weadock, receivers of the Bay Cities Consolidated Railway Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for plaintiff, defendants bring error. *Reversed.*

*T. A. E. & J. C. Weadock*, for appellants.

*Frank L. Edinborough* (*De Vere Hall*, of counsel), for appellee.

HOOKER, J. The defendants were receivers of a street railway in Bay City, and were conducting its business at the time of the occurrence of the accident which is the subject of this action. The plaintiff is the administratrix of one George Philip, deceased, and is alleged to be his widow. At the time of the accident, George Philip was yardmaster for the Grand Trunk Railway, and was in charge of a train of 13 freight cars, which was being backed across the street-railway tracks, which were laid along Midland street. The deceased was upon the first car, with his lantern in hand, as the train was backed southward towards Midland street, which car came into collision with a street car upon defendants' road, whereby he was thrown from the car, and run over and killed by his own train. At this point the street railway was crossed by two tracks belonging to the Grand Trunk

Railway Company and one owned by the Michigan Central Railroad Company, and there is testimony in the record tending to show that the middle track, upon which deceased's train approached the crossing, was slightly lower than the others,—perhaps two inches or thereabouts. The train was moving at the rate of four or five miles an hour, and the deceased was acting as lookout upon the end of the train.

The street car was in charge of a conductor, and there was some testimony to the effect that he was upon the front platform of the car, with the motorman, when the collision occurred. Other testimony indicated that he was in the car, going to the rear platform, at that time. There is testimony that the street car did not come to a full stop before an attempt was made to cross the track. There is a dispute about this, however, and there is little doubt that its speed was checked. There is no claim that either the conductor or the motorman left the car and went to the track to see if it would be safe to attempt to cross; and it is claimed by the defense that the testimony shows that it would have been unsafe for the motorman to attempt to cross while the conductor was absent, for the reason that, owing to the nature of that particular crossing, the trolley was liable to slip off from the wire, and in such case the car would have been unable to proceed until the conductor should have returned and replaced it. It was also claimed that it would have been useless for the motorman to leave his car to see if the track was clear, for, had he done so, and found the track apparently clear, by the time he could have returned to the car it would have been as dangerous to cross as in the first instance.

The evidence showed that a flagman was kept at this crossing during the daytime by the Grand Trunk Company, but it was after his hours, and he was absent. It was also shown that the Michigan Central Company was in the habit of flagging its trains across this crossing, but that the Grand Trunk Company did not do so. The steam railroads were laid along Williams street, and at the

corner of Williams and Midland there was a building that obstructed the view of the railroads to the north, and sometimes a car was left on the siding,—*i. e.*, the first track,—still further obstructing the view. There was a dispute as to whether such a car was there on this occasion. There was some dispute as to how far the motorman could see up the track, which depended somewhat on how near the track he ran his car before putting on the current to cross. After getting upon the track the motorman discovered the train, and reversed his motor, but did not succeed in quite clearing the car.

Counsel for defendants' most comprehensive point is that the court should have directed a verdict for the defendants, for the reasons, *first*, that there was no testimony that there was any negligence in the management of the street car; *second*, that the undisputed testimony shows that the Grand Trunk Railway Company was negligent in not flagging its train across the street, by stopping it, and sending a man ahead of it, to see that the crossing was safe.

We cannot say that there was no negligence on the part of the street-car men. Aside from the statute (2 Comp. Laws, § 6464) which requires street-railway companies "to require their drivers to bring their cars to a full stop, before going upon a crossing of the tracks of a steam railroad, and make sure that no engine or cars are approaching, before they proceed to go upon the same," it was necessary for the crew of the street car, in this instance, to use reasonable care in approaching and crossing this track. We do not agree with the argument of the plaintiff that, under this statute, the failure of the motorman to make sure that no engine or car was approaching was negligence, whatever the circumstances attending his failure, and the court could not say that negligence was conclusively shown for the reason that the fact of the collision shows that he could not have been sure that the crossing was safe. What the judge did was to leave it to the jury to determine whether the motorman took such measures as the circumstances

required to ascertain whether a train was approaching, leaving to them the determination of what was done, as well as what was reasonably necessary to make sure, as required by law. There was no error in this, and defendants' point that a verdict should have been directed upon that ground was not well taken.

Upon the other ground, the court instructed the jury:

"But, even though the employé of the defendant be negligent, in order for the administratrix to recover, the deceased himself, who was injured by the neglect, if there was neglect, on the part of the defendant, must also have been free from negligence; in other words, in the operation of his train, of which he had charge, it was his duty to comply with the rules and regulations under which he was acting, and to act with such care and caution as a prudent man would under like circumstances. In running his train down to cross the tracks, he should run it with care, and with such method and system as would be best calculated to avoid accident. He must comply with the rules and regulations of his road, and the man must not be negligent and careless, and thereby contribute towards the accident and injury which followed. If he himself, as the law says, contributed to the injury or accident by fault or carelessness on his own part, that would prohibit his administratrix from recovering, because, where both parties contribute to an injury, the law leaves them both to suffer the consequences, whatever they may be, and neither one has a remedy against the other. But if he was handling his train in a cautious, careful, and approved manner, and with no violation of the rules of good judgment and care, such as should be exercised by him under the circumstances, then he would be free from negligence himself, and, if the defendant's agent's negligence brought about the accident, the defendant is liable."

Counsel offered the following request:

"If the Grand Trunk Railway Company was negligent in backing or pushing its cars across the track, at the time in question, without either stationing a flagman there, or leaving a man to flag the crossing for the cars in question, then the plaintiff cannot recover."

The court gave this, but added to it the following qualification, viz.:

"If he had anything to do with or control over the matter, and he was negligent in the matter, there could be no recovery in this case."

Counsel claim that it was shown, and not contradicted, that the only safe way to operate a train across that street would be to bring it to a full stop and flag the crossing. If this were so, and it conclusively appeared that deceased had full control of and responsibility for the management of the train, as is stated in defendants' brief and the charge of the court, and not denied in plaintiff's brief, so far as we can discover, such negligence would be his, and it is possible that a verdict should in such case have been directed. There was opinion evidence from several witnesses, not objected to, that it was negligent and unsafe to back the train across the street without flagging, in the absence of a watchman; but we think these opinions were not conclusive of the question, and were properly left to the jury, with the testimony tending to show an exceptionally dangerous crossing. *Freeman* v. *Railway Co.*, 74 Mich. 86 (41 N. W. 872, 3 L. R. A. 594).

The appellants' tenth request—*i. e.:* "If you find that the accident was the result of concurring negligence upon the part of the defendants and their employés, or either of them, upon one side, and upon the part of the Grand Trunk Railway Company upon the other, then the plaintiff cannot recover in the action"—was properly refused. If the Grand Trunk Railway was negligent in not keeping a watchman, such negligence is not imputable to the intestate. The only theory upon which it can be so contended is that, by engaging in the operation of backing the train in the known absence of a watchman, he assumed the risk. As between himself and his employer this may be true, but these defendants have no rights growing out of such assumption of risk. If, however, it was negligent to omit the precaution of keeping a watchman, it was negligent to back the train across the street without flagging, and, under the undisputed facts, the deceased was in charge and control of the train, and such

negligence (if it was negligence) was his, and, as the judge stated, would preclude a verdict for plaintiff.

The defendants' counsel claim that the plaintiff was not the lawful wife of the deceased, and offered to prove it by showing that he had a lawful wife living other than the plaintiff. This evidence was excluded. They also offered, but were not permitted, to show that he had children by such wife living. On the other hand, the plaintiff was allowed to testify that the intestate had made an arrangement with her whereby he had agreed to adopt two children of hers by her first husband. · 3 Comp. Laws, § 10428, limits the recovery of damages to pecuniary injury to the persons entitled to distributive portions of the deceased's estate. To arrive at the amount of these, it is necessary to know who such persons are, and how they have suffered. If the administratrix was not his widow, she was not entitled to a share of his estate; and the same is true of her children by her former husband, so far as appears by this record. It was therefore error to exclude the offered proof, and to admit the testimony about the alleged agreement to adopt her children.

The mortality tables are ordinarily admissible in such cases, as we have frequently held, and were in this case, if there was any foundation for their admission.

Error is assigned upon the argument of counsel, which is alleged to have been intemperate and unfair. We think it open to such criticism. A defendant has a right to have a dispassionate consideration of the questions in his case.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.

### ON MOTION FOR REHEARING.

HOOKER, J. Counsel for plaintiff having moved for a rehearing, we have examined the cause again. The claim that the adjudication that the plaintiff is the widow of the deceased, necessarily determined in the proceedings whereby she was appointed administratrix, is conclusive

upon the world, and therefore precludes the denial of her widowhood by these defendants, rests upon a failure to discriminate between the right to administratorship, which defendants cannot attack, and the fact of widowhood, which they may question in a different subject-matter; not having appeared or taken part in the proceedings for letters of administration. The statement that securing letters of administration upon the uncontested claim of widowhood establishes the latter fact against the world is startling in its possible consequences to heirs and to a true and lawful widow. It would be an easy way to forestall a prosecution for bigamy, if it were the law. But it is not, as the following authorities will show:

In *Blackham's Case*, 1 Salk. 290, plaintiff in trover proved goods to have been taken from his possession by defendant. Defendant showed that the goods had belonged to Jane Blackham in her lifetime, and that he had taken out letters of administration upon her estate, and so was entitled to the goods. Plaintiff then proved that she was married to him a few days before her death. The defendant answered that the court could not have issued letters of administration to him but upon supposing there was no such marriage, and that this was conclusive upon plaintiff. The court held otherwise.

An adjudication of death is a necessary fact to the issue of letters of administration; yet the supreme court of Iowa held that, while such issue is *prima facie* evidence of death, the presumption raised thereby is very weak, and may be rebutted by slight evidence, in an action on a policy of insurance. *Tisdale* v. *Connecticut Mut. Life-Ins. Co.*, 26 Iowa, 170 (96 Am. Dec. 136). See, also, s. c., 28 Iowa, 12. A companion case went to the Supreme Court of the United States, where it was held that:

"In a suit brought by the plaintiff in his individual character, and not as administrator, to recover a debt upon a contract between him and the defendant, where the right of action depends upon the death of a third person, letters of administration upon the estate of such

person, granted by the proper probate court in a proceeding to which the defendant was a stranger, afford no legal evidence of such death." *Mutual Ben. Life-Ins. Co.* v. *Tisdale*, 91 U. S. 238.

There is a discussion and review of the authorities in that case. A clear exposition of this distinction will be found in a criticism of this case in 3 Cent. Law J. 169.

The case of *James* v. *Mining Co.*, 55 Mich. 347 (21 N. W. 361), upon which the plaintiff relies, was not, in our opinion, intended to lay down a different rule. The question put to the administratrix in that case was upon cross-examination, and as follows:

" *Q*. Was not Thomas James married to another woman before he married you, and is not that wife still living, and not divorced ?"

Plaintiff's counsel objected to said question as incompetent and immaterial. The court sustained the objection, "and an exception was noted." This was all there was of the cross-examination, and it followed the admission of her letters of administration against an objection upon the ground that it was not shown that the probate court had obtained jurisdiction to issue them. The appellee's brief discusses the question of immateriality, insisting that the question of her right to administration was not open, and that she was not the heir, but the representative, of the deceased, by virtue of her appointment as administratrix, and that she could not reasonably have been expected to meet the question of the validity of her husband's divorce; and the brief states that these were the views of the circuit judge. The opinion of the court indicates that the right to administration, rather than the fact of widowhood as bearing upon the amount of damages, was looked upon as the question, and both appellee's brief and the opinion are silent upon the point first made in appellant's brief, viz., that on the fact of widowhood depended, to some extent, the amount of damages.

Again, it is inferable that in that case, as in *Waldo* v. *Waldo*, 52 Mich. 94 (17 N. W. 710), which is the only

case cited by counsel or court, tne question was whether the validity of a decree of divorce could be attacked collaterally,—a different question from the one before us.

The objection that this question went to the measure of damages was not called to the attention of the trial court specifically. It has often been held that grounds of objection must be specifically stated. *People* v. *Foglesong,* 116 Mich. 556 (74 N. W. 730); *Jourdan* v. *Patterson,* 102 Mich. 602 (61 N. W. 64); *Mahiat* v. *Codde,* 106 Mich. 387 (64 N. W. 194); *Benedict* v. *Provision Co.,* 115 Mich. 527 (73 N. W. 802); *Hynes* v. *Hickey,* 109 Mich. 188 (66 N. W. 1090); *Isaacs* v. *McLean,* 106 Mich. 79 (64 N. W. 2); *Rivard* v. *Rivard,* 109 Mich. 98 (66 N. W. 681, 63 Am. St. Rep. 566); *Farrell* v. *School District,* 98 Mich. 43 (56 N. W. 1053); *Ranson* v. *Weston,* 110 Mich. 240 (68 N. W. 152); *John Hutchison Manfg. Co.* v. *Pinch,* 107 Mich. 12 (64 N. W. 729, 66 N. W. 340); *Heddle* v. *Railway Co.,* 112 Mich. 547 (70 N. W. 1096); *Krolik* v. *Graham,* 64 Mich. 226 (31 N. W. 307); *Abbott* v. *Chaffee,* 83 Mich. 256 (47 N. W. 216); *Merkle* v. *Township of Bennington,* 68 Mich. 133 (35 N. W. 846); *People* v. *Moore,* 86 Mich. 134 (48 N. W. 693); *Hutchinson* v. *Whitmore,* 95 Mich. 592 (55 N. W. 438); *Seventh-Day Adventist Pub. Ass'n* v. *Fisher,* 95 Mich. 274 (54 N. W. 759); *Gilbert* v. *Kennedy,* 22 Mich. 117; *Lobdell* v. *Bank,* 33 Mich. 408; *Jennison* v. *Haire,* 29 Mich. 207; *Rash* v. *Whitney,* 4 Mich. 495; *Jochen* v. *Tibbells,* 50 Mich. 33 (14 N. W. 690); *Young* v. *Stephens,* 9 Mich. 500; *Maxwell* v. *Kellogg,* 55 Mich. 606 (22 N. W. 60); *Heymes* v. *Champlin,* 52 Mich. 26 (17 N. W. 226). The objection in *James* v. *Mining Co.* was well taken as to the ground stated and discussed in the trial court, and the defendant's counsel made no claim there of the reason for the admission of the testimony which he afterwards urged in this court. Apparently it did not then occur to him. If it did, his conduct was unfair to the trial court. The province of this court is to pass upon questions *raised and passed upon* in the court below.

*Wierengo* v. *Insurance Co.*, 98 Mich. 627 (57 N. W. 833); *Ross* v. *Township of Ionia*, 104 Mich. 326 (62 N. W. 401). In *Rogers* v. *Ferris*, 107 Mich. 129 (64 N. W. 1048), we refused to consider a question that the attention of the trial court had not been called to. See, also,—a similar case,— *Wolf* v. *Holton*, 110 Mich. 166 (67 N. W. 1082); *Thomas* v. *Railroad Co.*, 114 Mich. 59 (72 N. W. 40).

Under the rule of these cases, the court might well have refused to consider the point made for the first time in appellant's brief; and its silence upon the subject, and the discussion of the other proposition, convince us that it did so. The importance of the question was too obvious to permit the inference that it would have been ignored if considered properly raised. It was an action brought by an administratrix and widow. It appears to have turned upon the question of her right to sue as administratrix, and it was held this could not be questioned. That is so in this case. The plaintiff may sue, but she must prove damages; and if she is not the lawful widow, and her children are illegitimate, or the children of a former husband, the defendants are not liable for injury to them, and they are not foreclosed on either question by the letters of administration.

The rehearing is denied.

GRANT and MONTGOMERY, JJ., concurred with HOOKER, J.

CARPENTER, J. ( *dissenting* ). I cannot assent to the opinion of my Brother HOOKER. I think the precise question discussed in his opinion was decided in *James* v. *Mining Co.*, 55 Mich. 335 (21 N. W. 361), and I cannot consent to overrule that decision. Defendant's plea in that case was the general issue, with notice that it would prove that plaintiff was not the administratrix of the estate of the decedent. In this case it was the general issue merely. There was involved in that case, as in this, the right of

defendant to show that the plaintiff administratrix, though
formally, was not legally, married to decedent; that dece-
dent, at the time of the marriage with plaintiff, had another
wife living, from whom he was not divorced.   This testi-
mony was objected to by plaintiff on the ground that it
was incompetent and immaterial.   If, as claimed by my
Brother, this testimony had a legitimate bearing upon the
measure of damages, it was neither incompetent nor im-
material.   The objection, in other words, was not well
taken, under that theory.

When the case was brought to this court for review, if
it could have been said that this testimony was offered as
bearing upon the plaintiff's cause of action, and not as
bearing upon the question of her damages, then I agree
that this court should have considered it solely from the
first point of view; or, if this court could have said that
the trial court proceeded upon the theory that its admissi-
bility was to be looked at from the point of view of its
bearing upon the cause of action, solely, and that de-
fendant's counsel did not suggest another point of view,
then in that case the question of its bearing on damages
should not have been considered.   But I do not think the
record warranted this court in making either of these
answers to the claim of defendant that the testimony was
admissible as bearing on the question of damages, and I
think it clear that it did not attempt to make either of
those answers.   As I read that case, the court clearly said
that the excluded testimony was not admissible as bearing
on the cause of action, and I think, too, that it intended
to hold that it was not admissble, under the plea of the
general issue, as bearing on the measure of damages.
That is the construction which I give to this language:
"It is not competent on this issue to inquire into matters
which no one could fairly anticipate, and which would be
no bar to the action."   Page 347.

I cannot, therefore, regard the question discussed in this
opinion as unsettled.   I think it is authoritatively settled
by the decision of *James* v. *Mining Co*.   I am bound to

add that, in my judgment, no injustice will result from following that decision.

MOORE, C. J., concurred with CARPENTER, J.