CHARLES H. FOLDEN, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Lease.** A lease is "properly a conveyance of any lands or tenements (usually in consideration of rent or other annual recompense) made for life, for years, or at will. Rent, properly speaking, is not essential to a valid lease of land.

2. **Forgery:** UTTERING AND PUBLISHING. To utter and publish an instrument alleged to have been forged, "is to declare or assert, directly or indirectly, by words or actions, that it is good." Rule applied.

3. **Immaterial Error.** An immaterial error, or one which could not have prejudiced the prisoner, is not a ground for a new trial.

4. **Presence of Prisoner at Trial.** The presence of a prisoner at his trial being once shown by the record will be presumed to have continued to the end unless the contrary be made to appear.

ERROR to the district court for Fillmore county. Tried below before WEAVER, J.

*John P. Maule,* for plaintiff in error.

1. The fabricated writing was invalid as a lease within the meaning of the statute. Comp. Stat., sec. 1, chap. 73. Definition of lease. 1 Hilliard on Real Property, 261, sec. 2. Definition of rent. 2 Bouvier Dic., 437. There is no rent stipulated for here. The agreement is to quit claim an interest in the premises in consideration of a certain amount of wheat and corn. If the pretended lease is not valid in law as a lease, it is not the subject of forgery. *Clarke v. The State of Ohio*, 8 Ohio State, 630. Wharton on Criminal Law, vol. 2, sec. 1444. *John v. The State*, 23 Wis., 505. *Roode v. The State*, 5 Neb., 174.

2. The verdict is not sustained by the evidence. The lease is dated March 1, 1881, at which time Folden was the owner of and in possession of the premises. Story purchased Folden's interest March 22, and there is no proof of an uttering of the lease after that date.

3. The record should show affirmatively that the defendant was in court when the verdict was brought in by the jury. *Burley v. The State*, 1 Neb., 391.

*C. J. Dilworth, Attorney General,* and *W. H. Morris, District Attorney,* for the State, cited *Dodge v. The People,* 4 Neb., 227.

LAKE, CH. J.

The prisoner was indicted, tried, convicted and sentenced for the crime of forging a lease from one Joseph Story to himself. A demurrer was interposed to the indictment, on the ground that the instrument alleged to have been forged was not a lease. The demurrer was overruled, and the overruling of it is the first error complained of.

The instrument was clearly a lease, which is " properly a conveyance of any lands or tenements (usually in consideration of rent, or other annual recompense), made for life, for years, or at will." * * * * " Though no formal words are requisite to a lease at common law, the usual

words of operation in it are 'demise, grant, and to farm let, *dimisi, concessi, et ad firmam tradidi.*'" 1 Brown & Hadley's Com., Am. ed., 744.

Referring to the instrument in question, we find that it comes fully up to this requirement. By its express terms the nominal lessor, Joseph Story, "in consideration of the covenants of the said party of the second part," (the prisoner) does lease to him the premises described, "from the first day of March, 1881, to the first day of December, 1881." While it is true that the consideration mentioned does not fall within what is commonly understood by the term rent, that is not at all important. Rent, properly speaking, is not essential to a valid lease of land. 1 Washburn on Real Property, *292. As expressed in the instrument itself, the "consideration of the leasing of the premises as above set forth" was, that the prisoner should "quit claim his interest to said premises;" but as to what that interest was understood to be, we are unadvised. However, let the consideration from the lessee be what it may, the obligation imposed upon Story by the plain terms of the instrument, was that of lessor and nothing else.

But it is claimed further, that the evidence as to the uttering and publishing of the instrument was insufficient. "To utter and publish an instrument, is to declare or assert, directly or indirectly, by words or actions, that it is good." Whar. Am. Crim. Law, 339. All this the prisoner did of this instrument, as a brief reference to the evidence will show.

W. A. Folden, a witness called by the prisoner, testified that he drew up the lease at his request. The prisoner then took it and went away. It is shown, too, by the testimony of several witnesses, including the prisoner himself, that he had the lease in his possession after it purported to be signed by Story, and claimed rights under it. He even testified that he saw Story sign it. And David S. Robinson, called by the state, swore that the prisoner came to

him with the lease and wanted to commence a suit against William Lipincott for trespass on the land described in it. Upon Robinson expressing the opinion, as justice of the peace, we suppose, that the lease was not "complete" for want of a witness and acknowledgment, the prisoner asserted its sufficiency by saying "he had a counsel on that, and it was all right." And this witness, in answer to the question: "State as near as you can the exact language he (the prisoner) used," said: "I think he said that Story had been over there and denied the lease; and he claimed he had a lease, and wanted to sue Lipincott for trespass on the land."

It is also claimed that the court erred in refusing to sustain objections made on behalf of the prisoner to several questions put to him on his cross-examination. These questions were in effect, whether he had, on certain occasions, said that he did not sign Story's "name to the lease, and Story would have trouble in proving who did it?" His answers were, that he had not.

These questions ought certainly to have been rejected. They were neither proper cross-examination, nor competent for any other purpose that we are aware of. They neither sought to contradict anything called out by the direct examination, nor to lay a foundation for impeachment. The assertion of the prisoner upon the witness stand was, that Story signed the lease himself, and he saw him do it. To have had him admit, or to have proved that he had said he did not sign Story's name to it, would have been in entire harmony with that assertion. It would have benefitted rather than injured him. Therefore, although these questions were erroneously admitted, inasmuch as neither they nor the answers to them could possibly have prejudiced the prisoner, the error is not a sufficient ground for a new trial.

Still another error alleged is, that the court permitted the jury to use a magnifying glass, produced by counsel

for the state, but not offered in evidence, in examining the signature alleged to have been forged. To this, it is a sufficient answer to say, that there is nothing in the bill of exceptions to show that a magnifying glass was either used or produced in court, so that no foundation exists for the objection.

And, lastly, it is urged that the record fails to show affirmatively that the prisoner was present in court when the jury brought in their verdict. This point was not made in the motion for a new trial, and therefore, even if it could otherwise be regarded as fatal to the judgment, it is too late to raise it now. *Dodge v. The People*, 4 Neb., 220. The record, however, does show that the prisoner was duly arraigned, and plead to the indictment; that he was present at the impaneling of the jury who tried him, and gave his own testimony as a witness before them. With these facts, it would be altogether unreasonable to presume from the mere silence of the record on that point, that he was absent when the verdict was received by the court. Where the record once shows the presence of the prisoner at his trial, it will be presumed to have continued to the end unless the contrary is affirmatively shown. The presumption is, rather, that the trial court did its duty, than that it did not. We see no error in the record that calls for a new trial, and the judgment must be affirmed.

JUDGMENT AFFIRMED.