CONSOLIDATED ICE-MACH. CO. v. TRENTON HYGEIAN ICE CO.

(Circuit Court, D. New Jersey. September 26, 1893.)

1. NEW TRIAL—MISCONDUCT OF JURY—"QUOTIENT" VERDICT.
    A verdict obtained by taking one-twelfth of the aggregate amount of the several estimates of the jurors is not objectionable when there was no antecedent agreement to be bound by the result, and when each juror deliberately assented to and accepted the amount thus ascertained.

2. SAME—EVIDENCE—AFFIDAVIT OF JUROR.
    It is against public policy to receive the affidavit of a juror for the purpose of impeaching a verdict by showing that it was a "quotient" verdict.

3. SAME—MISCONDUCT OF JURY—WHAT CONSTITUTES.
    In an action to recover the price of an ice plant sold, where the defense was rested largely upon the alleged poor quality of ice produced, it was highly improper for jurors, on encountering one of defendant's ice wagons during the trial, to examine the ice, and test its quality for themselves.

4. SAME—WAIVER BY PARTY.
    Where, however, such misconduct had come to the knowledge of the defeated party before he had closed his testimony, and he nevertheless went on with the trial, and did not call the matter to the court's attention until after the return of the verdict, he waived his right to object thereto, and could not have a new trial on that ground.

At Law. Action by the Consolidated Ice-Machine Company against the Trenton Hygeian Ice Company to recover the price of an ice-machine plant. There was a verdict for plaintiff, and defendant now moves for a new trial. Motion denied.

John H. Kitchen and Gilbert Collins, for plaintiff.
C. H. Beasley and Allan L. McDermott, for defendant.

GREEN, District Judge. This was an action brought by the plaintiff against the defendant to recover the consideration price of an ice plant made, constructed, and set up by the plaintiff for the defendant in the city of Trenton. The defendant insisted that the ice plant was in various respects defective, and not in accordance with the written contract which had been made by the parties; that it was impossible to produce good, merchantable ice by it when in operation; and that in consequence of the impure character of the ice which had been made by the machine great loss had accrued to the defendant. Upon the trial the jury rendered a verdict in favor of the plaintiff for $78,363.42. A motion was immediately made for a new trial, and two causes were assigned therefor: (1) That the verdict which had been rendered was technically a "quotient" verdict; (2) that the verdict was invalid because of the misconduct of the jury during the trial.

While it may be accepted as settled that a verdict rendered in pursuance of an agreement by the jurors to accept one-twelfth of the aggregate amount of their several estimates, without the assent of their judgment to such a sum as their verdict, is invalid, yet it is equally well settled that, although jurors divide the aggregate of their several estimates by 12, and return the quotient as their verdict, it will not be held to be legally objectionable if, after the amount has been ascertained, the respective jurors deliberately assent to and accept the amount so obtained as, in their opinion, a just verdict, and so return it. The essential ingredient of a "quotient" verdict which renders it objectionable in the eye of the law is that there should be an antecedent agreement between the jurors to accept the result of the division without hesitation as the proper and true verdict to be rendered. The testimony taken on the rule to show cause in this case shows that upon the suggestion of one of the jurors, after the jury had retired to their room for the consideration of the issues to be decided by them, it was agreed that each juror should write upon a slip of paper that amount which should be allowed to the defendant for the damages which the defendant claimed to have sustained by the imperfect condition and operation of the ice plant after it had been delivered to it, and that the total amount of these sums should be divided by 12, and the result, if satisfactory, should be the verdict on that branch of the case. It will be noticed that this proposed course of action related to but one of the various defenses which had been interposed by the defendant to the plaintiff's claim. The affidavit before the court shows that this agreement was attempted to be carried out but in fact was carried out only partially; for the result turned out to be so unsatisfactory, when the division was made, that a number of jurors declined to accede to it, and insisted that another ballot should be taken. Even that produced an unsatisfactory result. And still another attempt was made—in fact, five or six

in all—before the sum was produced which seemed to be satisfactory to all the members of the jury. When that sum was obtained by the division as described, each juror, without exception, assented to it, and adopted it as the fair and just allowance which should be made to the defendant for the damages which it claimed, and rendered it in open court as their true verdict.

Such a verdict, so obtained and so assented to, without the antecedent agreement to be bound by it, which seems to have been wanting in this case, is not objectionable as a "quotient" verdict. But, even if it were so objectionable, the only evidence that the verdict was arrived at in this manner is the affidavit of one of the jurors who was himself guilty of the alleged misconduct, if it was misconduct. Such an affidavit from a juror cannot be received to impeach his verdict, or to show what transpired in the jury room among his fellow jurors while engaged in the consideration of the case in question. Public policy, sound reason, are wholly against it. To admit such evidence would tend to defeat the solemn act of the jury, done under the solemn obligation of an oath publicly taken in a court room, and would open the door widely to iniquitous influences, resulting always in injustice. It must be rejected. There is absolutely therefore no legal evidence before the court that the verdict in this case was arrived at in any other manner than fairly and justly; hence this reason falls to the ground.

The main issue in this case chiefly concerns the insufficiency of the ice plant erected by the plaintiff for the defendant under a written contract, especially with reference to the character of the ice produced by it when in operation. The plaintiff claimed that the ice plant was in good condition, and would produce, if properly operated, good, pure, merchantable ice. The defendant denied this, and it was the chief contention in the cause. During the trial it appears, by the affidavits presented to the court on this motion, that a wagon filled with the ice made by the plant in question happened to be at the door of the courthouse as the jurors were passing out at recess, and that some of them, seeing it, closely examined the ice, tasted it, smelled it, and criticised it; and this conduct on the part of the jury is assigned as a second reason for a new trial. It is hardly necessary to say that a cause should be decided by a jury solely upon the evidence produced before it legally during the trial, in the presence of the court, and that it is highly improper for a jury, or any member of it, to acquire information or knowledge touching any issues pending in the cause in any other way. It was an important question whether the ice made by this ice plant in every respect accorded with the guaranty of its character which the plaintiff had made as a consideration for the execution of the contract in question. A large amount of evidence had been taken pro and con upon this issue. Beyond question, those jurors who saw fit to investigate, for the purpose of informing themselves as to the character of the ice made by the plant, that load of ice which was standing before the courthouse, did a highly improper act.

Such evidence was wholly illegal, and should have received no attention by any jury, nor should it have been permitted to have any effect upon the action of the jury. Had the matter been brought to the attention of the court immediately upon its becoming known, as it should have been, in all probability the trial would have been then and there terminated. But the evidence is that the incident occurred while the testimony was in the course of being taken. It was known to the defendant almost immediately and before it had closed its testimony; and yet, after it was so known, witnesses were sworn on both sides, testimony taken, the cause summed up by the counsel, the jury charged by the court, and the verdict rendered, without any reference being made to it in any manner.

The failure to act promptly in matters of this sort is often fatal, and it must be held to be so in this case. A party cannot be permitted to lay by, after knowledge of a matter of this character, and speculate upon the result, complaining only when the verdict is unsatisfactory. As was stated by Judge Shipman in Berry v. De Witt, 27 Fed. Rep. 723:

"A party cannot know during the trial a fatal objection arising from the misconduct of a juror upon the trial, and yet keep silent, and then seek to take advantage of it in the event of an adverse verdict. The effect of the misconduct by the juror is lost if it is not complained of by the injured party as soon as he knows of it."

As stated in this case, complaint was not made until the result of the trial was known. Such laches destroys the defendant's right.

The rule to show cause is discharged.