## WILSON et al. v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. June 2, 1902.)

### No. 736.

1. SMUGGLING—INDICTMENT—TRIAL—INSTRUCTIONS—TESTS IN JURY ROOM.
    Where, on the trial of defendants under an indictment charging them with smuggling "opium prepared for smoking purposes," a can was introduced in evidence, with proof that it was one of the cans seized by the officers and with which defendants were connected, but there was no testimony that the can contained opium prepared for smoking purposes, an instruction that while in the jury room the jury could extract some of the contents of the can and test it on a piece of silver or stick, and see whether it would burn or not, and that whatever could be determined from their inspection of the can, in addition to the testimony of the witnesses, they had a right to, was error.

In Error to the District Court of the United States for the Northern Division of the District of Washington.

Morris & Southard and George McKay, for plaintiffs in error.
Wilson R. Gay, U. S. Atty., and Edward E. Cushman, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The plaintiffs in error were jointly indicted. There were two indictments against them, each of which contained four counts. The indictments were precisely similar, except that in one 265 pounds of opium prepared for smoking purposes was the subject-matter, and 320 pounds of opium prepared for smoking purposes was

the subject-matter of the other. The fourth count of each indictment was quashed, leaving standing the first, second, and third of each, to which pleas of not guilty were interposed. The cases were thereafter consolidated and tried together, resulting in a verdict of guilty against both defendants, who have brought the case here by appeal.

By the first count of each indictment the defendants were charged with having knowingly, fraudulently, and unlawfully received and concealed the opium therein described, alleged to have been of foreign growth and manufacture, and to have been theretofore clandestinely brought into the United States from British Columbia without the duty fixed thereon by law having been paid or secured to the United States; by the second count the defendants were charged with having knowingly, fraudulently, and unlawfully assisted in the alleged fraudulent and unlawful importation; and by the third count with having themselves made the alleged unlawful and fraudulent importation. At the trial a certain tin can was, against the objections of the defendants, admitted in evidence, after the giving of some testimony tending to prove that it was one of the cans seized by the officers of the government, and with which the defendants were connected. There was no testimony given, or even offered, tending to show that the can admitted in evidence contained opium prepared for smoking purposes, and yet that was the article, and the only article, that formed the subject of the indictments. Legal proof of it was therefore essential to a legal conviction of the defendants. That fact was recognized by the court below in one portion of its charge, where it was said:

"The government is held to strict proof of the commission of the crime in the manner in which it is specified in the indictment. Now, these defendants are accused of smuggling opium,—I use that in a general sense for brevity,—and they cannot be convicted of smuggling silk or anything except opium, and the kind of opium that is specified in the indictment; that is, opium prepared for smoking purposes. And the offense is alleged to consist in the fact that this opium was clandestinely brought into the United States without the duty being paid or secured, and the government must prove nonpayment of the duty and that it was not secured."

The court then proceeded to instruct the jury as follows:

"A question of fact in the case, which the jury must pass upon and decide according to the evidence, is whether the commodity which the officers seized was opium. In that connection you will consider the testimony given by the witnesses on the subject, whatever it amounts to in your judgment, and the court has admitted as an item of evidence in the case a tin can, upon the testimony of witnesses tending to identify that can as one of the cans,—as a sample taken from the lot of opium that was seized. One can was introduced as a sample of all. Now, that exhibit is an item of evidence which you have a right to look to, and whatever information may be conveyed to you by an examination of it you have a right to make use of as testimony in the case bearing upon the question of whether or not opium was smuggled, and bearing upon the question as to whether the opium that was seized was of foreign production. Whatever it shows in regard to that you have a right to take into account, as well as the testimony of witnesses, and also as bearing on the question of whether or not the stuff in that can, if it is opium, is opium prepared for smoking purposes. These men are not indicted for bringing into the country any drug that may be used for other purposes, unless it is in a state prepared for smoking. The can has been opened, and the opening has been sealed up. It will not be com-

petent for you to make a chemical analysis of this to ascertain the percentage of any drug that there may be in it, but it will be permissible for you to make a hole in that can, and ascertain the best you can what the contents of the can is. You may have a piece of candle in your jury room, and test it by taking some of it on a piece of sliver or stick, and see whether it will burn or not. It would not be proper for me to tell you what the conclusion should be if you find that it will burn or will not burn,—you must depend on your own judgment as to the effect of that; but whatever can be determined from your inspection of this can, in addition to the testimony of the witnesses, you have a right to."

In this instruction, to which an exception was reserved by the defendants, we think there was clear error. It is contrary to fundamental principles to permit jurors to receive evidence without the presence of the defendant to the prosecution. They must and can only properly decide the question of his guilt or innocence upon evidence introduced at the trial. Whether or not the can admitted in evidence contained opium prepared for smoking purposes was a question of fact, upon which both sides were entitled to be heard, the defendants as well as the government. Surely, if the attorney for the government, as was his duty, had offered evidence going to show that the can in question contained opium for smoking purposes, the defendants would have been legally and justly entitled to have proved, if they could, that it contained no such thing; in which latter event there must have been a verdict of not guilty, for there was nothing else offered tending to show that there was any opium prepared for smoking purposes in the case. Yet the jury was left to determine that essential fact for themselves, by experiment, and in the absence of the defendants, who were thus wholly deprived of the opportunity to contest the correctness of the jury's experiments, and of the possibility of giving any evidence upon one of the essential facts involved in the prosecution. For this error the judgment must be reversed, and the cause remanded for a new trial. See Consolidated Ice Mach. Co. v. Trenton Hygeian Ice Co. (C. C.) 57 Fed. 898; People v. Conkling, 111 Cal. 616, 44 Pac. 314; Stampofski v. Steffens, 79 Ill. 303; 17 Am. & Eng. Enc. Law (2d Ed.) p. 1239; 12 Am. & Eng. Enc. Law (2d Ed.) p. 412, and cases there cited.

The judgment is reversed, and cause remanded for a new trial.