FALLS CITY v. BENNETT SPERRY.

FILED APRIL 9, 1903.   No. 10,522.

Setting Aside Verdict: PERSONAL KNOWLEDGE OF JURYMEN. Where it appears, by an undisputed showing in an action for damages for the change of a street grade, that one of the jurors had prior knowledge of the premises involved in the controversy, that he based his own conclusion partly thereon and used it to influence his fellow jurors in arriving at their verdict, the latter must be set aside.

ERROR to the district court for Richardson county: JOHN S. STULL, DISTRICT JUDGE. *Reversed.*

*B. D. Poland* and *J. E. Leyda,* for plaintiff in error.

*Edwin Falloon, Frank Reavis* and *Isham Reavis, contra.*

LOBINGIER, C.

Defendant in error obtained a judgment against Falls City for damages alleged to have resulted from a change in the grade of the street in front of the former's premises. In support of its motion for a new trial the city filed the affidavits of several of the jurors, to the effect "that Joseph

McCormick was one of the jurors on said case and that Joseph McCormick stated in the jury room before the members of the jury when said cause was under consideration, that he (McCormick) was well acquainted with the premises in question, that he had observed the street and premises of Bennet Sperry before the grading in question and that he knew from his own observation before and after the grading complained of in plaintiff's petition how the water took its course before said grading, along said street in front of plaintiff's premises." Affidavits of several outsiders were likewise filed, stating that the same juror had said to them "that he (McCormick) had arrived at his verdict, or the amount Sperry was damaged by the grading in question, partly from his own knowledge of the premises, gained from his observation of the street and premises in question before and after the grading complained of in plaintiff's petition." Plaintiff in error's attorneys also presented affidavits, one of which set forth that affiant "did not know that said Joseph McCormick personally knew anything about the premises at the time of the trial, and the knowledge of juror McCormick's knowledge came to me after the verdict had been rendered in said case; that said Joseph McCormick upon his *voir dire* examination before being sworn to try said case stated that he knew nothing concerning the case nor the merits thereof and that he had no knowledge of the facts in the case."

There was no counter showing, and these affidavits were incorporated in a separate bill of exceptions which was served within the forty days after the overruling of the motion. The affidavits are admissible because their purpose is "to prove matters occurring during the trial or in the jury room which do not essentially inhere in the verdict itself." *Johnson v. Parrotte,* 34 Neb. 26, 30; *Harris v. State,* 24 Neb. 803; *Savary v. State,* 62 Neb. 166, 179. Whether the facts therein recited were sufficient, therefore, to entitle plaintiff in error to a new trial, is one of the questions presented by this proceeding.

There was a time in the history of the law when a verdict

arrived at by the method here complained of would have been proper. The primitive English jury, while not, as is sometimes loosely said, a mere body of witnesses, was permitted to and did base its verdict chiefly upon the prior personal knowledge of its members. 6 Ency. Pl. & Pr. 668 *et seq.*, where the authorities, legal and lay, are collected. This rule was continued in force longer than it otherwise would have been, by the fact that jurors were liable to the penalties of attaint for a false verdict. 3 Blackstone's Commentaries, p. 374. And it was retained in *qui tam* actions until well into the eighteenth century. *Mattison v. Allanson*, 2 Strange (Eng.) 1238. But with the supplanting of the practice of attaint by that of new trials it came to be the rule that a juror could not use his personal knowledge of the subject matter of the controversy unless he was sworn and gave it to his fellow jurors like any other witness. *Bennet and the Hundred of Hartford*, Style (Eng.) 233 (1650); *Rex v. Rosser*, 7 Car. & P. (Eng.) 648; *Manley v. Shaw*, Car. & Mar. (Eng.) 361; *State v. Powell*, 7 N. J. Law, *244; *Anschicks v. State*, 6 Tex. App. 524, 539. This did not necessarily prevent him from still acting as a juror (*Howser v. Commonwealth*, 51 Pa. St. 332, 336; *Dunbar v. Parks*, 2 Tyl. (Vt.) 217; 1 Wharton, Evidence, sec. 602), but it did preclude him from communicating, simply as a juror, matters within his own knowledge.

The modern jury must arrive at its verdict from evidence regularly produced in the course of the trial proceedings. That evidence may be no different from such as might be acquired by the jurors unofficially, but still the latter could not be considered. Thus, the jury under the proper supervision may view the premises in controversy, and in this state such view may afford a proper basis for their verdict. *Chicago, R. I. & P. R. Co. v. Farwell*, 60 Neb. 322. But if one or more of the jurors should visit unofficially the same locality during the progress of the trial and reach a conclusion as a result of such inspection, the verdict would be vitiated. *Winslow v. Morrill*, 68 Me. 362; *Bowler*

*v. Washington,* 62 Me. 302; *Eastwood v. People,* 3 Parker Crim. Rep. (N. Y.) 25; *Flanders v. Mullin,* 73 Vt. 276; *Consolidated Ice-Machine Co. v. Trenton Hygeian Ice Co.,* 57 Fed. 898. There would seem to be no difference in principle between a juror's using knowledge irregularly acquired during that trial and relying on that acquired prior thereto.

On the principle above stated, jurors are not allowed to make private experiments or investigations for the purpose of determining essential controverted points. *People v. Conkling,* 111 Cal. 616, 627; *Wilson v. United States,* 53 C. C. A. 652, 654, 116 Fed. 484, 486. In short, they are not permitted to consider any fact not brought before them in the regular way (*Heffron v. Gallupe,* 55 Me. 563, 568; *Thompson v. Mallet,* 2 Bay (S. Car.) 94), and if one of their number, at any time before an agreement is reached, makes a statement to his fellow jurors based upon his prior personal knowledge and having a material bearing on the subject of their deliberations, the verdict is vitiated thereby. *Sam v. State,* 1 Swan (Tenn.) 60; *Ryan v. State,* 97 Tenn. 206; *Citizens' St. R. Co. v. Burke,* 98 Tenn. 650, 652; *Forsyth v. Central Mfg. Co.,* 103 Tenn. 497, 498; *Anschicks v. State,* 6 Tex. App. 524, 537. A juror is entitled of course, to use his general knowledge and experience on a subject for the purpose of testing the credibility of the witnesses, as on a question of value. *Rex v. Rosser,* 7 Car. & P. (Eng.) 648; *Patterson v. City of Boston,* 20 Pick. (Mass.) 159. But if he have knowledge of any specific matter in controversy, it is his duty to so inform the court, and have it placed before his fellow jurors, if at all, according to the established rules of trial evidence.

It is claimed, however, that the question of the alleged misconduct of the juror is not properly before us; that the *voir dire* examination should have been taken down by the reporter and can not be shown by affidavits. In our view, the question is not material, because the vitiating circumstance is the undisputed use, in the deliberations, of prior knowledge of the juror, which could only be shown by

affidavits, and which would have been equally fatal had the question not been covered by the *voir dire* examination. We think it proper to add that the affidavits, as we read them, did not necessarily impugn the good faith of the juror. He might have been perfectly sincere in his answer that "he knew nothing concerning the case" or its merits or facts. The affidavits do not indicate that the location of defendant in error's property was so described in the opening statements that the juror must necessarily have recognized it as that with which he was familiar. Moreover, most laymen, when interrogated as to their knowledge of a "case" or its facts or merits, would probably not understand that this referred to property that might be involved in the case; they would rather infer that this meant the dispute between the parties. Indeed, in the case at bar, the subject matter of the case was not plaintiff in error's property, but the amount of damage, if any, resulting from the change of grade. We think, therefore, that the juror might have answered as he did in good faith, even though at the time conscious of his familiarity with the premises. If, on the other hand, as well might have been the case, he did not recollect his acquaintance with the premises from anything said in the opening statements, his answer would have constituted no ground for a new trial. *Fitzpatrick v. People,* 98 Ill. 269.

But with a distinct and undisputed showing that this juror not only had this prior knowledge and based his own conclusions partly thereon, but that he used it to influence his fellow jurors in arriving at their verdict, we are unable to see how it can be permitted to stand. The facts are exactly opposed to those in *Chicago, B. & Q. R. Co. v. Oyster,* 58 Neb. 1, 15.

It is also claimed that the affidavits are defective in failing to show that the officers of plaintiff in error were ignorant of the juror's prior knowledge. Had it been shown that plaintiff in error's agents and representatives did actually know of this, and permitted it to stand without protest, the objection would have been waived. *Stam-*

*pofski v. Steffins*, 79 Ill. 303; *Whitcher v. Peacham*, 52 Vt. 242; *Consolidated Ice-Machine Co. v. Trenton Hygeian Ice Co.*, 57 Fed. 898. But no such showing was made and we can not presume that such was the case, especially as the attorneys distinctly state in their affidavits that they knew nothing of it.

There are other questions discussed in their briefs, but their determination is not necessary to a disposition of this proceeding, and they are not likely to be raised upon another trial.

We recommend that the judgment be reversed and the cause remanded for further proceedings.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.