WILLIAM FEDDERN v. STATE OF NEBRASKA.

FILED JULY 12, 1907.  No. 15,094.

1. **Criminal Law:** TRIAL: PRESENCE OF ACCUSED: PRESUMPTIONS Where the record in a criminal prosecution discloses that the defendant was present during the trial, but is silent as to whether he was present when the verdict was received, it will be pre-

sumed that the verdict was properly received and that the defendant was present in court at the time.

2. **Intoxicating Liquors: EVIDENCE.** In a prosecution under section 7170, Ann. St., for keeping intoxicating liquors with the intention of disposing of the same without a license, it is competent for a witness, who is familiar with the taste of beer and has tasted some of the liquors seized, to testify that they tasted like beer.

3. ——: ——: **HARMLESS ERROR.** In such prosecution it is not prejudicial error to admit testimony of keeping of other liquors than those charged in the information, when the evidence shows that the liquors charged in the information were kept for sale and were intoxicating.

4. ——: **INSTRUCTIONS.** In such prosecution, where the evidence tends to show that the liquors kept for sale under the names and labels of "Hop Soda," "Cream of Malt" and "Malt Extract," were in fact beer, it is not error for the court to instruct the jury, as a matter of law, that beer is an intoxicating malt liquor, and is within the meaning of the words intoxicating liquors, as used in the statute.

5. **Criminal Law: CONDUCT OF JURY: HARMLESS ERROR.** It is not such misconduct of a juror as will call for a reversal of the case for a juror to state to his fellow jurors, during their deliberations upon the verdict, that he knew about the facts and had personal knowledge of the facts before he was selected as a juror, where he does not disclose to his fellow jurors the facts that were within his personal knowledge.

6. ——: ——: **RECORD: REVIEW.** This court will not consider affidavits made after the trial to determine the question of whether or not a juror had made statements during the deliberations of the jury upon the verdict that were at variance with his *voir dire* examination, when such *voir dire* examination is not in the record, unless it is shown that the complaining party was prevented, without fault on his part, from having such examination taken and preserved in the record.

ERROR to the district court for Cedar county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Willard & Snider* and *C. B. Willey,* for plaintiff in error.

*W. T. Thompson, Attorney General, Grant G. Martin* and *H. E. Burkett, contra.*

GOOD, C.

In this action the defendant was charged with the violation of section 7170, Ann. St., making it unlawful for any person to keep for the purpose of sale without a license any malt, vinous or spirituous liquors in the state of Nebraska, and making it a misdemeanor for any person to be found in possession of any intoxicating liquors within the state with the intention of disposing of the same without a license. The defendant, having been found guilty and sentenced to pay a fine of $100, brings the case to this court for review.

From the undisputed evidence it appeared that the defendant had been operating a saloon in the village of Randolph for several years immediately preceding the first day of May, 1906; that during the year 1906 no saloon licenses were granted by the village authorities of Randolph. The defendant continued in business in his saloon building, selling certain drinks under the names of "Hop Soda," "Cream of Malt," "Malt Extract," and "Fremont Old German Tonic." On the 10th day of November, 1906, the defendant's premises were searched, and a large quantity of the above mentioned liquors was seized. That the defendant had the liquors in his possession for the purpose of sale, and was selling them, is conceded. The theory of the defense was that the liquors were not intoxicating.

Defendant first contends that the transcript does not show that the jury were sworn to try the case, that neither the defendant nor his counsel were present when the verdict was returned, and that the jury were not polled. As to the first of these assignments, it is sufficient to say that the transcript does not bear out defendant's contention. It clearly shows that the jury were duly impaneled and sworn. As to whether or not defendant or his counsel were present when the verdict was received the record is silent. Nowhere in the record does it appear that either was absent at the time. The presumption arises that,

when the defendant in a misdemeanor case is once shown to be present, his presence is continued during the progress of the trial, unless the contrary be made to appear. The record discloses that the defendant was present at the trial and testified as a witness in his own behalf. The presumption is always in favor of the regularity of the proceedings of a court of record, and the presumption obtains here that, defendant being once present, his presence is continued until the verdict was received. *Folden v. State,* 13 Neb. 328; *Bolln v. State,* 51 Neb. 581. There is no requirement of the law that the jury shall be polled. Section 486 of the criminal code provides that the jury may be "polled at the request of either the prosecuting attorney or the defendant." In this case there was no request to have the jury polled, and therefore no right accorded to defendant by the law was denied him. It is necessary that the jury should be polled only when requested by either the defendant or the prosecuting attorney.

Defendant next contends that there was error in the admission of certain testimony. Several witnesses who had tasted and drunk of the liquors that defendant had kept and sold, and that had been taken from his premises under the search warrant, were permitted to testify that the liquors in question tasted like beer. Defendant contends that this was erroneous. A chemist had analyzed several samples of the different kinds of liquors taken from the defendant's premises under the search warrant, and testified as to the results of his analysis, as to the percentage of alcohol in each, and that each of the samples contained more than 2 per cent. of alcohol, ranging from 2 1-10 to 2 72-100 per cent. The chemist testified that he was familiar with beers and their composition, and that the several liquors labeled as "Hop Soda," "Cream of Malt," "Malt Extract" and "Fremont Old German Tonic" were malt liquors and belonged to the class of liquors known as beers. From a consideration of the evidence in the case, it is apparent that the liquors known

as "Hop Soda," "Cream of Malt," "Malt Extract" and "Fremont Old German Tonic" were, in fact, malt liquors and were beers of the lighter class, though sold under names and labels that did not disclose their true properties and characters. Evidence of those who were competent to give an opinion on the subject that they tasted like beer was, under the circumstances, properly admissible. While the liquors were sold under names and labels that did not necessarily indicate that they were intoxicating liquors, the evidence of those who had tasted and drunk thereof, to the effect that they tasted like beer, was competent as tending to show that the liquors belonged to the class, the keeping of which for sale was inhibited by the statute.

The description of the liquors in the information was in the following language: "Certain intoxicating liquors, to wit, Malt Extract, Cream of Malt and Hop Soda." No mention is made in the information of the liquor called "Fremont Old German Tonic." Evidence was admitted on the trial showing that the defendant kept for sale and was selling liquors under this name, and the chemist was permitted to testify as to the analysis of it and as to the percentage of alcohol contained in it. Defendant complains because this evidence was admitted, for the reason that he was not charged in the information with the keeping for the purpose of sale Fremont Old German Tonic. He contends that he was, or at least might have been, found guilty of keeping for sale a liquor, with the keeping of which he was not charged in the information. If there was no evidence of the keeping for sale of the liquors described in the information, and the only evidence as to the keeping of liquors was as to that called "Fremont Old German Tonic," there would be much greater force in defendant's contention. But the evidence is ample, and, in fact, it is admitted by the defendant, that he did keep and sell all of the liquors charged in the information, and there is ample evidence in the record that all of these liquors charged in the information were intoxicating. In

fact, the only evidence to the contrary is that of certain persons who drank of the liquors and experienced no intoxicating effect from the drinking of the same. The evidence as to the percentage of alcohol contained in each of the liquors was not controverted or denied. The admission of evidence that the defendant had in his possession intoxicating liquors other than those described in the information was, under the circumstances, not erroneous. He was charged with keeping intoxicating liquors for sale under three separate denominations. The state went further, and proved the three charged and one additional, and, while various names were given to the liquors, the evidence fairly discloses that all of the liquors were, in fact, beers that were being sold under fanciful names. The court in its instructions to the jury limited its consideration to the liquors described specifically in the information, and limited the right of the jury to convict to the liquors therein described. We cannot presume that the jury disregarded the instruction of the court and convicted the defendant of unlawfully keeping for sale a liquor not described in the information.

The defendant complains of instruction No. 5, given by the court. It is in the following language: "The word 'beer,' without restriction or qualification, denotes an intoxicating malt liquor, and is within the meaning of the words 'intoxicating liquor,' as used throughout the statute." The defendant contends that this instruction was erroneous, because of the fact that he was not charged with the keeping for sale of beer. However, the evidence fully justifies the conclusion that the liquors sold were, in fact, beers, and this court has held, in the case of *Peterson v. State,* 63 Neb. 251, that the courts of this state will take judicial notice that beer is an intoxicant. The instruction given was correct, as a matter of law, and, under the evidence introduced in this case, it was peculiarly fitting and applicable, and was properly given.

We now come to the consideration of the last, as well as the most serious, of defendant's contentions, namely,

the misconduct of one of the jurors. It is made to·appear by the joint affidavit of four of the jurors that another of the jurors, who had sat in the case, stated to his fellow jurors, while they were deliberating upon the verdict, that he knew about the facts, that he knew about the case of his own personal knowledge before he was selected as a juror, and that he was surprised that none of the attorneys in the case asked him whether or not he knew anything about the case, and that they did not ask him if he had his mind made up, that he had been in Randolph and knew how the said defendant was conducting and running his place of business, and that he knew of his own personal knowledge about the liquids seized, and that a detective had been employed to apprehend the defendant, and that he knew how he worked it to trap him. In the case of *Falls City v. Sperry,* 68 Neb. 420, upon a showing very similar to that in the case at bar, the court held the misconduct was such as to require a setting aside of the verdict. We have carefully examined the case, and are satisfield as to the propositions of law stated therein; but we are inclined to the opinion that a wrong application was made of the principles therein announced. In the syllabus the following language is used: "Where it appears * * * that one of the jurors had prior knowledge of the premises involved in the controversy, that he based his own conclusion partly thereon and used it to influence his fellow jurors in arriving at their verdict, the latter must be set aside." We are in entire accord with the proposition of law as thus announced, but the affidavit filed in that case by the fellow jurors was very similar to the affidavit filed in the case at bar. A careful examination of the affidavit in that case, as well as the one in the case at bar, will show clearly that it goes only to the fact that the juror knew about the case on trial and had knowledge of certain facts in the case, but the affidavit in neither case goes to the extent of showing that the juror disclosed the knowledge he possessed to any of his fellow jurors. It is

45

not disclosed by the affidavit in that case, nor in the case at bar, that the juror stated a single fact to his fellow jurors that could have been material evidence either for or against the defendant, and it falls far short of showing that the juror stated any fact that might have been prejudicial to the defendant in the case. If the juror had gone further, and not only stated that he possessed the knowledge, but had detailed the knowledge to his fellow jurors, then there would be such misconduct as would call for a reversal. But this is not the case. In the case of *Falls City v. Sperry, supra,* there were affidavits of others than the jurors, to the effect that the juror there had made up his mind at least partly from his personal knowledge, and that he had based his verdict at least partly upon the information he possessed before the trial. These affidavits were by persons who had heard the juror make statements after the verdict had been rendered. It may well be doubted whether this practice is permissible. The general weight of authority seems to be to the contrary. The affidavit in the case at bar does not go to the extent of showing any statements made by the juror to his fellow jurors that would be prejudicial to the defendant. There is another phase of the case that should not be overlooked. In this case the keeping of the liquors for sale by the defendant was not controverted, but was admitted by him. The only defense that he attempted to make was that the liquors were not intoxicating. Under these circumstances, that was practically the only issue in the case, and the affidavit nowhere indicates that the juror had, or claimed to have, any knowledge as to the character of the liquors and as to whether or not they were intoxicating.

The defendant further contends that the statements made by the juror are at variance with his *voir dire* examination, and that, by reason of the statements made upon his *voir dire* examination, they were misled into accepting him as a juror, and that his statements to his fellow jurors show that he was biased and prejudiced, while the *voir dire* examination did not disclose such fact,

and that this constitutes such misconduct of the juror as would entitle defendant to a new trial. The *voir dire* examination of this juror is not in the record. No reason is given for omitting it. The *voir dire* examination of other jurors appears in the record, and the defendant has attempted to supply the *voir dire* examination of this juror by the affidavits of the defendant and his counsel. If the *voir dire* examination of the juror was in the record, and that examination showed a material variance with the statements made by the juror to his fellow jurors, we should feel constrained to hold that it might, under some circumstances, be such misconduct as would call for a reversal of the case. But we do not think it is proper practice to permit the *voir dire* examination of a juror to be supplied in the record by affidavits made subsequently to the trial by those who heard such examination, unless the defendant has been prevented, without fault on his part, from having the *voir dire* examination taken and preserved in the record. There is no excuse or reason given for not having such examination in the record. The frailties and imperfections of human memory are proverbial, and for a person to undertake to detail the substance of the examination of one of the jurors out of a dozen, or two dozen, examined would be extremely dangerous practice. We think that such practice would be likely to lead to consequences that would be disastrous, and would be opening the door to an easy method of overturning a verdict in almost any case. We deem it contrary to sound policy to permit affidavits made after the trial to take the place of the official record of the *voir dire* examination, unless it is shown that the party complaining has, through no fault on his part, been deprived of having the *voir dire* examination preserved in the record. Our attention has not been called to any case, nor have we been able to find any, except the case of *Falls City v. Sperry, supra,* wherein it was sought to supply the *voir dire* examination by affidavits made subsequently to the trial by those who heard

the examination. The question seems to have been raised, but not decided, in that case.

We fail to find any prejudicial error in the record, and therefore conclude that the judgment of the district court is right and should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.