STATE, RESPONDENT, *v.* BYRNE, APPELLANT.

(No. 4,725.)

(Submitted June 3, 1921. Decided June 20, 1921.)

[199 Pac. 262.]

*Criminal Law—Murder—Demonstrative Evidence—Exhibits—
Admissibility—Declarations of Co-conspirator—Jury—Gen-
eral Challenges—Proper Denial—Reception of Verdict—
Presence of Defendant—Minutes of Court.*

Murder—Demonstrative Evidence—Admissibility.
  1. Demonstrative evidence is relevant and admissible, when it shows
  the commission of the crime or throws light on the way it was com-
  mitted.

.Same—Exhibits—Admissibility.

2. The bullet extracted from the body of deceased, bullets, empty shells and a cap found in the room where the homicide occurred, firearms and gloves found at the place where defendant was arrested, were all admissible under the rule that articles which are shown to have been connected with the commission of a crime, are admissible in evidence if they are properly identified and there has been no substantial change in them.

Same—Evidence—Parts of Body of Deceased—When Admissible.

3. Parts of the body of deceased may be exhibited to the jury in a homicide case, if first identified and shown to be in the same condition as when found or as at the time of burial.

Same—Skull of Deceased Admissible in Evidence, When.

4. Where the wounds from which deceased died consisted of a blow on the head and a shot through the body inflicted at the same time and by the same parties, admission of the skull in evidence was proper as a part of the testimony of the physician on the stand, in illustration of the character and extent of the injuries.

Same—Evidence—Map of *Locus in quo,* admissible.

5. A map prepared by the county surveyor illustrating the place where the homicide occurred and testified to by him as being correct was properly admitted in evidence.

Same—Declaration of Co-conspirator—When Admissible.

6. Evidence of the driver of an automobile in which defendant with three others were riding that upon his inquiry where they wanted to go, one of them directed him to the place of the homicide, was properly admitted, since all acted together and the direction was given without protest from defendant.

Same—Uncertain Identification of Defendant—Refusal to Strike—Harmless Error.

7. Refusal to strike the testimony of the wife of deceased that she "seemed to think" that it was the shorter of two men who struck deceased was not reversible error, where she also testified that the man in the lead dealt the blow and defendant admitted that he was the first man entering the room where the killing took place.

Same—Jury—General Challenges—Proper Denial.

8. General challenges of jurors "for the purposes of the record" who while stating on their *voir dire* that they had read the newspaper account of the killing of deceased and were of the opinion at the time that he had been murdered, did not state that they had any belief that defendant had committed the crime, but did say that they would follow the instructions of the court and render an impartial verdict, were properly denied.

Same—Trial—Reception of Verdict—Presence of Defendant—Minutes of Court—Sufficiency.

9. The contention that defendant was not present when the verdict was received, *held* without merit, where the minutes of the clerk recited, that, trial being resumed, "each party being present represented by counsel," rebuttal testimony was heard, the jury instructed, and the cause argued, that the jury retired and later returned in open court and submitted their verdict, which was filed and read by the

---

3. On admission in evidence of portions of body of deceased on trial for homicide, see note in 12 L. R. A. (n. s.) 238.

clerk in open court, no statement appearing that any adjournment of the court was had from the time it convened on that day to the filing and reading of the verdict.

*Appeals from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

STEVE BYRNE was found guilty of murder in the first degree, and from the judgment of conviction and from an order denying a new trial, he appeals. Affirmed.

*Mr. Joseph J. McCaffery,* for Appellant, submitted a brief; *Mr. F. J. Sullivan,* of Counsel, argued the cause orally.

There was error in admitting the upper portion of the skull of the deceased in evidence. Modern authority condemns the practice of receiving in evidence grewsome exhibits which have no tendency to elucidate the issues and which tend to inflame and incite the passions and prejudices of the trial jurors. An examination of the exhibit will convince this court that it has no other tendency than to dethrone the reason of the jurors and not allow them to coolly and dispassionately consider the case in the light of the law and the facts. There was no substantial dispute as to the existence of the wounds, their character and effect. (*Melton* v. *State,* 47 Tex. Crim. 451, 83 S. W. 822; *Cole* v. *State,* 45 Tex. Crim. 225, 75 S. W. 527.)

The court erred in receiving in evidence a plat or diagram of the scene of the tragedy and the streets and buildings in the immediate vicinity. It will be noticed by an examination of the exhibit that there is certain wording upon the same. It was not shown that the witness had any knowledge of the facts conveyed to the jury by the statements on the exhibit. They were purely hearsay. (*Monmouth Mining & Mfg. Co.* v. *Regmier,* 49 Ill. App. 385.)

The record discloses that after the argument of counsel and the submission of the cause to the jury, they subsequently returned into open court and upon being polled after the verdict had been read answered that such was their verdict. The

record fails to disclose whether or not the defendant was present when the verdict was received, and it nowhere appears from the minute entries of the court on Friday, April 2, 1920, the last day of the trial, that said verdict was received in the presence of the defendant or that he was actually present during these proceedings, and no fair or reasonable construction of the record affirmatively establishes. this indispensable fact. It is true that the record recites that the defendant was present that morning when the case was resumed, but his presence up to the time the jury retired would afford no reasonable basis for the conclusion that he was present when the verdict was received without doing violence to the ordinary rules of construction and common sense. This court and the members thereof know as a matter of common knowledge that after the case is submitted to the jury the court adjourns and reconvenes to receive the same. (*State* v. *De Lea,* 36 Mont. 531, 93 Pac. 814; *Humphrey* v. *State,* 3 Okl. Cr. 504, 106 Pac. 978; *Day* v. *Territory,* 2 Okl. 409, 37 Pac. 806; *Le Roy* v. *Territory,* 3 Okl. 596, 41 Pac. 612.)

Under section 9320, Revised Codes, as interpreted in the *De-Lea Case,* the record in this case fails to measure up to the requirements of the law, and is defective in this respect to such an extent as to require a reversal of this cause and that it be remanded for a new trial.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. George Bourquin,* and *Mr. N. A. Rotering,* for Respondent, submitted a brief; *Mr. L. A. Foot,* Assistant Attorney General, and *Mr. Rotering* argued the cause orally.

A portion of the skull of the deceased was introduced in evidence. The defendant objected and now bases his first assignment upon the order of the court in overruling his objection. Demonstrative evidence like this is always competent and admissible. (*Territory* v. *Lobato,* 17 N. M. 666, L. R. A. 1917A, 1226, 134 Pac. 222; *People* v. *Besold,* 154 Cal. 363, 97 Pac. 871; *State* v. *Bailey,* 79 Conn. 589, 65 Atl. 951; *State* v. *Lewis,* 139 Iowa, 405, 116 N. W. 606; *McElwaine* v. *Com-*

*monwealth,* 154 Ky. 242, 157 S. W. 6; *Turner* v. *State,* 89 Tenn. 547, 15 S. W. 838, 842.)

Firearms taken from the room of the accused in a homicide case are admissible. The same may be said of the shells found where one of the appellant's companions stood when he was shooting at the wife of the deceased. (16 C. J. 618; *People* v. *Byrne,* 160 Cal. 217, 116 Pac. 521, 530; *Commonwealth* v. *Best,* 180 Mass. 492, 62 N. E. 748.) Cases which are directly in point are cited in 6 Encyclopedia of Evidence at page 700 of the supplement thereto.

Maps, when shown to be reasonably correct, are always admissible. (16 C. J. 745; 17 Cyc. 412.) Maps and photographs showing the topography of the place of the homicide are admissible. (*People* v. *Phelan,* 123 Cal. 551, 56 Pac. 424; *State* v. *Remington,* 50 Or. 99, 91 Pac. 473.) Private plats or lead pencil sketches are commonly received in evidence to illustrate the testimony of the witness. (*Drew* v. *City of Butte,* 44 Mont. 124, 119 Pac. 279.)

Appellant says that his challenges to Jurors O'Neill, Ball and Reese should have been sustained. Under section 9264, Revised Codes, they were properly permitted to sit. They all stated that any opinion which they might have would be laid aside; that their verdict would be based solely and only upon the evidence to be submitted and that they would accord a fair trial to all of the parties concerned. "On a trial for homicide a juror is not incompetent merely because he believes that deceased was murdered." (24 Cyc. 291; *State* v. *Olsen,* 88 Kan. 136, 127 Pac. 625; *Cason* v. *State,* 52 Tex. Crim. 220, 106 S. W. 337, 338; *State* v. *Ware,* 58 Wash. 526, 109 Pac. 359; *State* v. *McDaniel,* 39 Or. 161, 65 Pac. 520; *State* v. *Mott,* 29 Mont. 292, 306, 74 Pac. 728.)

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

On the tenth day of December, 1919, the county attorney of Silver Bow county filed an information against the defendant,

Steve Byrne, and three others, charging them with the crime of murdering Sylvester J. Prenatt on the ninth day of December, 1919. The defendant, the appellant herein, was given a separate trial, which resulted in a verdict of guilty of murder in the first degree, the jury fixing the punishment at death. From the judgment entered on this verdict and from the action of the court in overruling the defendant's motion for a new trial, these appeals are taken.

From the evidence introduced by the state, it appears that the deceased was assaulted by several men in his house at No. 1717 B Street in the city of Butte, at about the hour of 2 o'clock on the morning of December 9, 1919, and was so badly injured that he died some two hours thereafter. The relation of the defendant to the tragedy, as appeared from this evidence, may be briefly traced.

On December 5 of that year, the defendant, in company with three others, went in a car to the vicinity of deceased's residence and drove around. At about 1 o'clock on the morning of December 8, the defendant, with three others, drove to the vicinity of the deceased's house, the defendant Byrne directing the driver where to go, and about 1 o'clock on the morning of December 9, the defendant and one other were driven to the vicinity of the deceased's residence, one of the men at the time wearing a cap. The defendant Byrne again directed the driver where to go. As they neared the place another car passed them, when, by direction of defendant, the driver turned the car, drove to a certain place, and stopped, when defendant and the other man got out of the car, defendant giving the driver direction where to wait with the car, about a block away. Soon after that, defendant came back to the car hurriedly, bareheaded, his left thumb bleeding, and said: "We got in a scrap." Getting in the car, he was driven to the Moose Block. The driver also heard shots just before defendant returned to the car. The testimony relating to the occurrences at the house is to the effect that Mrs. Prenatt heard knocking at the kitchen door, and, upon asking who was there, some man's

voice replied: "A friend of Mooney's." Mr. Prenatt had previously worked for a man by the name of Mooney. Mrs. Prenatt did not open the door, but while she was hurriedly dressing the deceased awoke, and was told by Mrs. Prenatt that a friend of Mooney's was at the door. Making some remark about that being funny, Prenatt arose from his bed, got a pistol from the drawer, and after some few minutes went to the door, opened it, and, seeing the men there, called to his wife that it was a holdup, and tried to shut the door; but the man on the outside crowded the door open, and the leading man struck Prenatt over the head with something, and the shooting then began. The two men whom Mrs. Prenatt saw entering the room wore masks. Mrs. Prenatt ran out of the front door, when someone standing outside fired three shots at her. She saw three men running out of the kitchen. The smaller man was bareheaded, and one of the men remarked: "Jesus Christ, we have killed him." One of the other men said: "Yes, and he got me." The men were laughing. She entered the room and attempted to call assistance by phone, but could get no response; and it subsequently developed that the telephone wires had been cut. The ladder was still standing by the side of the house. The doctor and other assistance arrived, and on examination it was found that the blow Prenatt had received on the head had broken the outer tablet of the skull, that he had been shot once through the hand, and one shot had entered his left breast, ranging upward, lodging in his neck. He was found lying on the floor with a black cap under his head. The bullet was extracted from the neck; other bullets were found in the room where the shooting occurred.

About 8 o'clock on the morning of the 9th of December, the officers went to the Moose Block, to room No. 4, supposed to be occupied by the defendant, but received no response to their knocking on the door. One of the officers looked through the transom and saw a man lying on the bed, but he would not respond to their calls; and one of the officers then raised the transom, got into the room, unlocked the door from the inside,

then discovered that the man on the bed had disappeared. There was a door there leading to another room, No. 5. The officers went into the hall and demanded entrance to room 5, but, receiving no response, broke in the door, but saw no one. On searching the bed, however, they found the defendant lying on the springs under the mattress. And in searching the room they found in a drawer one pistol with five empty shells in it, and another pistol with one empty shell. A pair of gloves was also found in a bureau drawer in room No. 4. The thumb of the left glove was moist.

A statement alleged to have been made by defendant was put in evidence, in which he says that they went out to this place to get $8,000 worth of whisky "which we suppose he had stolen, and we were going to steal it from him." He also admitted that he had no right out there, that some of the men with him were masked and carried guns, but that he himself was not masked. He also testified that the deceased was struck over the head, but that he himself did not do it, and that he had been shot once by the deceased and once by one of his companions. Shells were found at or near the place where the man stood who shot at Mrs. Prenatt. A map made by the county surveyor, illustrating the place of the tragedy and the surrounding country, was also introduced in evidence. Bullets were also found either on the floor or imbedded in the wall or furniture of the room where the tragedy occurred.

At the trial of the case, the portion of the skull showing the injury thereto, also the bullet taken from the deceased's neck, the map of the premises, the bullets found in the room where the shooting occurred, the cap found there, the guns and the gloves found in the room where the defendant was arrested, and the shells found at the point where the man stood who had fired at Mrs. Prenatt, were all admitted in evidence over the objection of the defendant, who assigns error by reason thereof.

Generally, it may be stated that "demonstrative evidence [1–3] is relevant and admissible when it shows the commission of the crime charged, or throws light on the way it was committed."

"Articles which are shown by the evidence to be connected with the crime, or which serve to unfold or explain it, may be exhibited in evidence, provided they are properly identified," and provided there has been no "substantial change" in them.

"Weapons, tools, bullets, instruments, or other articles which appear from other evidence to have been employed in the commission of the crime are admissible in evidence."

"Parts of the body of deceased may be exhibited to the jury in a homicide case, provided they are first identified and are shown to be in the same condition as when found after the homicide, or as at the time of burial." (16 C. J. 617–622.)

And it is not error to admit in evidence the skull, or por- [4] tions thereof, of the deceased in a homicide case, when, as in the present case, the same was in effect a part of the testimony of the physician, and was necessary to illustrate the character and extent of the injuries, and it appears here that the injury to the head caused by the blow and the injury caused by the shooting were inflicted at the same time and by the same parties. The court did not err in admitting Plaintiff's Exhibit C, being a portion of the skull of the deceased. (*Territory* v. *Lobato,* 17 N. M. 666, L. R. A. 1917A, 1226, 134 Pac. 222; *State* v. *Bailey,* 79 Conn. 589, 65 Atl. 951; *Thrawley* v. *State,* 153 Ind. 375, 55 N. E. 95, 99; *State* v. *Teale,* 154 Iowa, 677, 135 N. W. 408, 410; *McElwaine* v. *Commonwealth,* 154 Ky. 242, 157 S. W. 6.)

"On a trial for assault with intent to kill, a map of the [5] *locus in quo,* shown to have been made by a competent surveyor, who was also a disinterested person, was competent, though made at the direction of the district attorney, to illustrate his theory of the case." (*State* v. *Remington,* 50 Or. 99, 91 Pac. 473.) Maps and photographs showing the topog-

raphy of the place of the homicide are admissible. (*People* v. *Phelan,* 123 Cal. 551, 56 Pac. 424.) The general rule with reference to the admissibility of maps and diagrams appears to be: "Unofficial maps, diagrams, plats, or plans representing things which cannot be as conveniently and as clearly described by witnesses, when proven to be correct, or when offered in connection with the testimony of a witness, are admissible as legitimate aids to the court and jury. A showing of the approximate correctness is sufficient." (16 C. J. 745.) The map in the present case, State's Exhibit B, was made by the county surveyor, and testified to by him as being correct.

In relation to the admissibility of exhibits such as appear in this case, we will cite the following additional authorities: *People* v. *Way,* 119 App. Div. 344, 104 N. Y. Supp. 277; *Id.,* 191 N. Y. 533, 84 N. E. 1117; *Turner* v. *State,* 89 Tenn. 547, 15 S. W. 838; *Wilganowski* v. *State,* 78 Tex. Crim. 328, 180 S. W. 692, 699; *People* v. *Byrne,* 160 Cal. 217, 116 Pac. 521, 530; *Commonwealth* v. *Best,* 180 Mass. 492, 62 N. E. 748. No error was committed by the court in admitting in evidence any of the exhibits complained of.

While the defendant and three other men were being conveyed to the vicinity of the Prenatt house on December 5, the driver of the car asked them, "Where to?" and someone in the back seat said, "1717 B Street." The defendant at that time was sitting in the rear seat, but it is not shown that it was the defendant who gave the answer, nor is it necessary that it should be. The parties were evidently acting together, and the statement was made in the presence of the defendant, without any protest or modification from him, and it is very apparent from the remainder of the testimony that that is the place to which the defendant, as well as the others, wanted to go. The order was given either by the defendant or one of his companions, and that is all that the law requires. (Sec. 7887, Rev. Codes; *State* v. *Fisher,* 54 Mont. 211, 169 Pac. 282.)

[60 Mont. 317.]

Defendant's specification No. 9 is directed to the action of
[7] the court in refusing to strike out a part of the testimony of
Mrs. Prenatt. In testifying relative to the men going into the
room when the assault was first made, she said there was a
tall man and a shorter man, and that the man in the lead
was the one who struck Mr. Prenatt; and, when asked whether
it was the taller or the shorter man, she said: "I seem to think
it was the shorter man." This language is objected to. From
the statement introduced in evidence as admission on the part
of the defendant, it appears that the defendant was himself
the first man in the room, as it there appears that he rapped
at the door, and when the door was opened from the inside the
men back of him pushed him in. In discussing this assign-
ment of error, the defendant's argument is that it singled out
the defendant as the party who delivered the blow. By the
evidence of the witness it was the party in the lead who de-
livered the blow, whether he was the shorter or the taller man.
It does not appear, either from the evidence or from the argu-
ment of defendant's counsel, that the defendant was in any
manner prejudiced by this statement.

By assignments 12, 13, 14, the appellant maintains that
[8] the court erred in refusing to sustain his challenge to the
jurors O'Neill, Ball and Reese. The challenge made in each
instance was: "We challenge the juror for the purpose of the
record." The challenges, it will be noticed, do not specify
any grounds or reason or cause, but are wholly general. The
Juror O'Neill stated that he had read the account of the
homicide, and that he at the time had the opinion that Prenatt
was murdered. The juror also stated that he felt at the
time of the examination that Prenatt was murdered. The
Juror Reese stated that he had read the newspaper account at
the time of the killing of Prenatt, and that he had an opinion
that Prenatt was dead, and according to the newspaper he
was murdered, but each of the jurors stated he would follow
the instructions of the court and render a fair and impartial
verdict. Not one of the jurors stated that he had any belief

that the defendant committed the crime, and the court did not err in denying the challenges. (Sec. 9264, Rev. Codes; *State v. Howard,* 30 Mont. 518, 77 Pac. 50; *State v. Haworth,* 24 Utah, 398, 68 Pac. 155, 158; *State v. Hoerr,* 88 Kan. 573, 129 Pac. 153, 156; *State v. Ware,* 59 Wash. 526, 109 Pac. 359; *People v. Foglesong,* 116 Mich. 556, 74 N. W. 730.)

By assignment No. 16, the defendant claims that "the court [9] erred in receiving the verdict in the absence of the defendant." The clerk's minutes of April 2, 1920, contain the statement: "This day the trial of this case being resumed, each party being present represented by counsel as before, and the jury being present." It is then recited that rebuttal testimony was heard, the jury were instructed, the cause was argued, the jury retired, and later returned in open court and submitted their verdict, which was filed and read by the clerk in open court. There is not any statement directly or indirectly, or any inference that any adjournment of court was had from the time it convened to resume the trial on that date and the filing and reading of the verdict returned by the jury. The question presented by the assignment is: "Does the record sufficiently show that the defendant was present at the time the verdict was received?" This question, under a similar record, has heretofore been considered and determined by this court adversely to the contention of the appellant herein, in which it was held that, construed fairly, this language must be held to mean that the defendant was present at the time the verdict was received. (*State v. Hall,* 55 Mont. 182, 187, 175 Pac. 267.) The decision in the *Hall Case* is supported by the great weight of authorities, some of which we here cite: *People v. Holmes,* 118 Cal. 444, 50 Pac. 675; *Sewell v. People,* 189 Ill. 174, 59 N. E. 583; *Feddern v. State,* 79 Neb. 651, 113 N. W. 127; *State v. Beedle* (Mo.), 180 S. W. 888; *Hughes v. State,* 109 Wis. 397, 85 N. W. 333, 336; *Kraimer v. State,* 117 Wis. 350, 93 N. W. 1097; *State v. Starr et ux.,* 52 La. Ann. 610, 26 South. 998; 17 C. J. 219.

We find no error in this record, and recommend that the judgment and order appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*

(Submitted June 3, 1921. Decided June 20, 1921.)